402 So.2d 466 (1981)
OWNER'S ADJUSTMENT BUREAU, INC. and Larry Dreyfus, Appellants,
v.
John H. OTT, Appellee.
No. 79-2092.
District Court of Appeal of Florida, Third District.
July 28, 1981.
*467 Harold M. Braxton, Miami for appellants.
Ligman, Martin, Shiley & McGee and Roderick L. McGee, Coral Gables, for appellee.
Before HUBBART, C.J., and HENDRY and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Dreyfus, said to be acting on behalf of Owner's Adjustment Bureau, Inc., wrote to Ott concerning a claim adjusting dispute. In this letter, Dreyfus stated:
"... a man of your intelligence and superior knowledge of the law of Florida should be cognizant of the fact that you have perjured yourself in yours of October 27, 1977." (emphasis supplied).
The letter bore notations which indicated that copies had been sent to Tri-State Insurance Company and three persons, Peter and Karin Gaspar and Mr. Lawler, Insurance Commissioner.
Ott, alleging that this statement in the letter was libelous, sued Dreyfus and Owner's. The trial court entered a summary judgment on liability in Ott's favor and a final judgment upon the jury's verdict awarding compensatory and punitive damages.
We reverse both the final judgment and the summary judgment on liability. First, there is absolutely no showing in the record that the persons and entity to which the copies were purportedly sent ever received the letter and, it necessarily follows, no showing that they read the letter. There was, therefore, no proof of publication, a necessary predicate to a finding of defamation and liability. As stated by Dean Prosser:
"Since the interest protected is that of reputation, it is essential to tort liability for either libel or slander that the defamation be communicated to some one other than the person defamed. This element of communication is given the technical name of `publication,'... . Where there is no communication to any one but the plaintiff ... no tort action can be maintained upon the theory of defamation. It is not enough that the words are uttered in the presence of others unless they are in fact overheard; nor, although there is some authority to the contrary, is it usually regarded as sufficient that they were sent through the mail on a postcard, or in an unsealed letter, unless it is proved that a third person read them." *468 Prosser, Law of Torts § 113, at 766-67 (4th ed. 1971).
Tyler v. Garris, 292 So.2d 427 (Fla. 4th DCA 1974). See Maine v. Allstate Insurance Company, 240 So.2d 857 (Fla. 4th DCA 1970). See also F. Harper & F. James, The Law of Torts § 5.15, at 390 (1956).
Second, Dreyfus and Owner's pleaded the affirmative defense of truth, which, in the absence of conclusive evidence negating this defense, precluded a summary judgment on liability. Markham v. Thompson, 368 So.2d 957 (Fla. 3d DCA 1979); Moseley v. Turrell, 354 So.2d 121 (Fla. 3d DCA 1978); First Mortgage Investors v. Boulevard National Bank of Miami, 327 So.2d 830 (Fla. 3d DCA 1976). See Hannah v. James A. Ryder Corp., 380 So.2d 507 (Fla. 3d DCA 1980). Ott disingenuously argues that the conclusive evidence required to negate the defense of truth is found in the proposition that since it is obvious that the "perjury" attributed to him was contained in his letter of October 27, 1977,[1] and was not made under oath or in a proceeding,[2] Ott could not legally be guilty of the crime of perjury, and, therefore, an accusation to that effect could never be true. Ott's argument proves too much. If, as he suggests, a statement contained in a letter is so obviously not perjury, so as to make an accusation to that effect untrue, then it is equally obvious that the accusation did not impute the commission of a criminal offense and was not, at least on that basis, a libel per se.
Ott's argument, moreover, concedes that the words  "you have perjured yourself in yours of October 27, 1977"  are susceptible of only one meaning, that is, that the "perjury" occurred in a letter written by Ott on October 27, 1977. Where a communication is reasonably susceptible of only one meaning, then it is for the court to determine as a matter of law whether it is libelous or not, Wolfson v. Kirk, 273 So.2d 774 (Fla. 4th DCA), cert. denied, 279 So.2d 32 (Fla. 1973); Restatement (Second) of Torts § 614 (1976), and if the court determines the communication is libelous, it is for the court to further determine whether it is libel per se or libel per quod.[3]
While ordinarily an accusation that one has perjured himself would, as a matter of law, be a libel per se, Stewart v. Codrington, 55 Fla. 327, 45 So. 809 (1908), in the present case the accompanying phrase "in yours of October 27, 1977" negates any imputation that the crime of perjury was committed.[4]Scougale v. Sweet, 124 Mich. *469 311, 82 N.W. 1061 (1900) (holding that, as a matter of law, the commission of the crime of perjury could not be imputed to the plaintiff to whom the defendant wrote, "When you assumed your present office, you took an oath to enforce the laws of the State. To violate an oath is always shameful  particularly so when it relates to official duties. Yet this thing you have done. In legal terms, the violation of an oath is called `perjury.'"). See generally Annot. 38 A.L.R.2d 161, 180 (1964).
"Words which impute a crime are actionable, not more because they expose the party charged to the danger of being convicted, than of being prosecuted, which even to the innocent, is a grievance; and in every instance where the meaning of what would otherwise have been an unambiguous accusation, has been controlled by circumstances which showed it to be groundless, and thus rendered it harmless: the controlling circumstances were so mingled with the accusation by the accuser himself, as to make the poison carry its antidote along with it... ." 38 A.L.R.2d at 181 n. 7, quoting Deford v. Miller, 3 Penr. & W. 103 (1831).
We conclude that in the present case the poison ("you perjured yourself") carried its own antidote ("in yours of October 27, 1977") and was, therefore, not a libel per se. We determine otherwise in respect to Dreyfus' letter as a whole. The letter is here reproduced:

Dear Mr. Ott:
A man of your intelligence and superior knowledge of the law of Florida should be cognizant of the fact that you have perjured yourself in yours of October 27, 1977. The requirements of filing a proof under contract has been negated by law as long as there is proper notice.
We certainly agree that you have not agreed to liability, which is a nebulous term. More important, by your action and that of an unlicensed adjustor, you have admitted coverage and waived or estopped any measures of denial.
In our opinion and that supported by counsel, we have a right to request an appraisal when there is an impasse. Again we request the appointment of an appraiser in compliance with Line 123 of the jacket.
Further, we request that Mr. Obler give us a contract which will be given to our insured. We suggest that the contract stipulate that Mr. Obler will repair all damage for $18,930.00 to the satisfaction of the insured and mortgagee. This contract should further state a time to commence and when the job should be completed. A penalty clause for non-compliance should also be in this contract.
Once the above is accomplished and proper exhibition of insurance and completion bonds, we feel the repairs could start.
Should you reject our request for the appraisal, we shall request *470 that Mr. Gaspar follow his quest for proper conclusion by the channels of court.
Very truly yours,
OWNERS' ADJUSTMENT BUREAU

Larry Dreyfus
ld:pr
cc: Mr. Lawler, Insurance Commissioner
 Miami Service Office
 1350 N.W. 12th Ave., Suite 332
 Miami, Fla. 33136
 Peter and Karin Gaspar
 1539 Garfield St.
 Hollywood, Fla.
 Tri-State Insurance Company
The letter, by accusing Ott of "perjury," notwithstanding that the imputation of the crime of perjury is negated, at the very least accuses him of dishonesty in connection with his business as a property claims manager for an insurance adjusting firm. As such, the letter imputes to Ott conduct incompatible with the proper exercise of his lawful business, and its necessary natural and proximate consequence is to cause injury to Ott in his business relations. For these reasons the letter constitutes a libel per se as a matter of law. Campbell v. Jacksonville Kennel Club, 66 So.2d 495 (Fla. 1953); Air Line Employees Association International v. Turner, 291 So.2d 670 (Fla. 3d DCA 1974); Carter v. Sterling Finance Co., 132 So.2d 430 (Fla. 1st DCA 1961). See Sharp v. Bussey, 137 Fla. 96, 187 So. 779 (1939).
We must, however, for the reasons stated earlier in this opinion, reverse the final judgment and summary judgment on liability and remand the cause to the trial court for further proceedings consistent herewith.
Reversed and remanded.
HUBBART, Chief Judge (concurring).
I concur in the opinion and judgment of the court and would add only that no issue has been raised in this case as to whether the defendant Dreyfus was in any way at fault in uttering the statements contained in his November 1, 1977 letter. We, therefore, have no occasion to determine whether Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), and Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) [holding inter alia that the First Amendment precludes the states from imposing liability without fault in a libel action] applies to a non-media defendant, as here, as well as to a media defendant. See, e.g., Jacron Sales Co. v. Sindorf, 276 Md. 580, 350 A.2d 688 (1976); Rest. (2d) Torts, § 580B (1977).
In this case, as in so many others, the parties have tacitly assumed that the law of libel, except as it applies to media defendants, has remained intact after the constitutional revolution wrought by the New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), line of cases. I would suggest that this is not necessarily the case, that, on the contrary, non-media defendants were accorded like constitutional protection along with the media defendant in the New York Times case itself, and that the great constitutional protections of free speech and free press contained in the First Amendment are not restricted to members of the news media, but apply to all persons in this country. Indeed, "[i]t would seem strange to hold that the press, composed of professionals and causing much greater damage because of the wider distribution of the communication, can constitutionally be held liable only for negligence, but that a private person, engaged in a casual private conversation with a single person, can be liable at his peril if the statement turns out to be false, without any regard to his lack of fault." Rest. (2d) Torts, § 580B, Comment e (1977).
We must leave, however, the resolution of this important question for another day *471 when the issue, unlike this case, has been properly presented below. The parties herein are nonetheless not precluded, as I see it, from subsequently raising the fault issue  should they choose to do so  in further proceedings in this cause.
NOTES
[1] Ott's letter of October 27, 1977, is a part of the record in this case. We are, however, limited to the four corners of the letter written by Dreyfus  the so-called defamatory instrument  in judging whether the words used therein are libelous or libelous per se. See Wolfson v. Kirk, 273 So.2d 774 (Fla. 4th DCA), cert. denied, 279 So.2d 32 (Fla. 1973).
[2] § 837.02, Fla. Stat. (1979); see § 837.012, Fla. Stat. (1979).
[3] But where a communication is reasonably susceptible of two meanings, one of which is libelous and one of which is not, it is for the jury to decide whether those who read the language in fact understood it as libelous. Wolfson v. Kirk, supra; Restatement (Second) of Torts, supra; F. Harper & F. James, The Law of Torts § 5.29, at 465 (1956); Prosser, Law of Torts § 111, at 749 (4th ed. 1971). Similarly, where a communication is reasonably susceptible of two meanings, one of which constitutes a libel per se and one of which constitutes a libel per quod, it is for the jury to decide whether the recipients of the communication who read the language understood it as one or the other. If, then, in the present case the words "you have perjured yourself in yours of October 27, 1977" were reasonably susceptible of being understood as accusing Ott of the crime of perjury as well as reasonably susceptible of being understood as accusing Ott of merely lying in a letter, it would be for a jury to decide how in fact the words were taken. But Ott, consistent with the accepted meaning of the words, see XII The Oxford English Dictionary 76 (1933) [in epistolary (now chiefly commercial) communication, the words "yours of" refers to "your letter of"], has clearly made the question whether the accusation is a libel per se a question for the court.
[4] Simply because there may be some technical impediment preventing an actual prosecution for the crime of perjury does not necessarily disqualify the accusation from being a libel per se. See F. Harper & F. James, The Law of Torts § 5.10, at 379 n. 36. But the cases which hold that the inability to prosecute does not affect the character of the libel are to be distinguished from those in which it is evident from the accusation itself that no crime was committed.