### HATJIOANNOU v. THE TRIBUNE COMPANY
Case No. 82-5383
Thirteenth Judicial Circuit, Hillsborough County
November 15, 1982

Jack M. Larkin, Spicola & Larkin, for plaintiffs.

C. Steven Yerrid and Marilyn J. Holifield, Holland & Knight, for defendant.

THOMAS A. MILLER, Circuit Judge

This cause came to be heard on The Tribune Company's Motion for Summary Judgment. In this libel action, plaintiffs complained of two articles published in *The Tampa Tribune* on October 5, 1981 and October 12, 1981 concerning bars and lounges in Tampa that were requiring frequent visits from law enforcement officers. These articles were based on statistics and information provided by the Hillsborough County Sheriff's Office. Plaintiffs complained that their bar was unfairly and improperly included in these accounts of "trouble spots" in the University of South Florida area.

In support of its motion for summary judgment, The Tribune Company relies on affidavits of a reporter, Carol Laughlin, and two official of the Sheriff's office, Sergeant James Kelley and Dispatch Supervisor Barbara Nicks. No affidavits were filed by plaintiffs. This court grants The Tribune Company's motion for summary judgment on three grounds: (1) The articles complained of are not defamatory; (2) the official action privilege precludes imposition of liability upon a newspaper for republishing information disseminated by a law enforcement agency; and (3) the neutral reportage privilege precludes imposition of liability upon a newspaper for republishing newsworthy information about matters of public concern. Any one of these grounds is sufficient to support entry of summary judgment.

Having granted summary judgment on the above grounds, there is no need to pass on The Tribune's fourth argument: whether a newspaper's reliance on official sources of information in publishing news articles precludes a finding of fault under an actual malice or negligence standard.

### FACTS

In September, 1981 Carol Laughlin, a reporter for *The Tampa Tribune,* wrote a news article concerning law enforcement problems at bars and

lounges near the University of South Florida in Tampa. The article published on October 5, 1981, stated in pertinent part:

> (a) that according to information provided by the Hillsborough County Sheriff's Office (Dispatch Supervisor Barbara Nicks and Patrol Sergeant James Kelley), certain bars and lounges required the most frequent law enforcement intervention in the University of South Florida area. The Stable Lounge was one of the bars named by the Sheriff's Office.
>
> (b) that the Sheriff's Office received fifty (50) calls from the Stable Lounge during the preceding month.
>
> (c) that the owners of the Stable Lounge acknowledged that previously there had been substantial drug problems at the bar, but denied the existence of a security problem and specifically denied that the Sheriff's Office had visited the bar fifty times during the preceding month, stating that calls relating to incidents occurring in the University Square Mall parking lot might be listed as Stable Lounge calls because of its location at the Mall entrance.

After receiving a complaint concerning the information in the October 5, 1981 article, Sergeant Kelley reviewed records of the Sheriff's office and determined that the statistics given as covering a one-month period were updated and cumulative, actually covering a longer period of time. He informed Carol Laughlin that there were five calls answered by Sheriff deputies to the Stable Lounge during August, 1981. He also stated that the revision of the statistics did not change his view that the bars referred to in the October 5, 1981, article were major trouble spots in the area.

On October 12, 1981, *The Tampa Tribune* published an article entitled "Statistics Revised On Trouble Calls at USF-Area Bars." The article reported the error in the statistics previously provided by the Sheriff's Office, additional information furnished by Sergeant Kelley after the October 5, 1981, article, and the further comments of the owner of the Stable Lounge concerning the statistics.

The affidavits of Sergeant Kelley and Dispatch Supervisor Nicks confirm that both articles were accurate reports of the information provided by the Sheriff's Office concerning the Stable Lounge. Other than statements attributed to the bar owner himself, the information provided by Sergeant Kelley and Mrs. Nicks were exclusive sources of the statements concerning the Stable Lounge.

## I. THE ABSENCE OF DEFAMATION.

To be actionable, a written statement must be libelous—tending to expose the plaintiff to hatred, contempt, or ridicule. Statements that are merely negative, critical of the plaintiff, or offensive to his particular sensibilities are not libelous, even if they have an adverse impact on the plaintiff's business. *See, e.g., Rush-Hampton Industries v. Home Ventilating Inst.,* 419 F. Supp. 19, 21-22 (M.D. Fla. 1976) (libel action dismissed because statement that plaintiff's product had not been approved for sale in Maryland was not libelous); *Chuy v. Philadelphia Eagles,* 595 F.2d 1265 (3d Cir. 1979) (statement that professional football player suffered from incapacitating illness held, as a matter of law, not libelous); *Ryan v. Shreveport Times,* 344 So.2d 114 (La. Ct. App. 1977) (affirming dismissal of libel action because statement that plaintiff has received a liquor license without satisfying all the requirements was not libelous); *Hambric v. Field Enterprises, Inc.,* 46 Ill.App.2d 355, 196 N.E.2d 489 (1964) (affirming dismissal of libel action because statement that plaintiff's tavern offered strip-tease dancing was not libelous); *Levinson v. Time,* 5 Med.L.Rptr. 2294 (Ill, Cir. Ct. 1979) (dismissal of libel action because statement that plaintiff jewelry store owner had been a "most uncooperative victim" with respect to police efforts to solve a robbery of his store was not libelous).

The portrayal of a business establishment as the *scene* of disturbances or crime is not libelous. *See Cooper v. Miami Herald Publishing Co.,* 159 Fla. 296, 31 So.2d 382 (1947) (news report that murder occurred in plaintiff's restaurant held not defamatory); *El Mason Espanol v. NYM Corp.,* 521 F.2d 737 (2d Cir. 1975) (false report that plaintiff's restaurant was a good place to meet a connection for buying cocaine held not defamatory since the owner himself was not accused of disreputable conduct). *See generally, Shapiro v. Newsday,* 5 Med.L.Rptr. 2607 (N.Y. Sup. Ct. 1980). The articles in question did not accuse the Stable Lounge of encouraging criminal conduct; and, in fact, they plainly negate any such suggestion.

Whether particular statements may have a defamatory meaning is an issue of law for the court. *See, e.g., Church of Scientology of California v. Cazares,* 638 F.2d 1272, 1286 (5th Cir. 1981) (Florida law); *Owner's Adjustment Bureau, Inc. v. Ott,* 402 So.2d 466, 468 & n.3 (Fla. 3rd DCA 1981). If the statement in question is confusing or ambiguous, the question whether readers actually interpreted it in a defamatory way may be submitted to the jury. *Id.* In this case, a review of the articles confirms that they plainly lack the defamatory character plaintiff must show in order to prevail, making summary judgment appropriate for The Tribune Company on this ground alone.

## II. THE PRIVILEGE TO REPORT OFFICIAL ACTIONS.

The Tribune Company cannot be held liable for publishing the Stable Lounge articles for two reasons: such liability (a) would impair the absolute privilege given to law enforcement agencies to disseminate information to the public; and (b) would nullify the privilege given to newspapers to report such information. Where the circumstances surrounding the dissemination of information to a newspaper by a law enforcement agency are not in dispute, the question whether the publication of that information is privileged is a question of law for the court. *O'Neal v. Tribune Company,* 176 So.2d 535, 538 (Fla. 2d DCA 1965).

Under Florida law, Sheriff's Office personnel and other law enforcement officers have an absolute privilege against liability for defamation. *Cobb's Auto Sales, Inc. v. Coleman,* 353 So.2d 922 (Fla. 4th DCA 1978); *Knight v. Starr,* 275 So.2d 37 (Fla. 4th DCA 1973), *rev'd and remanded on other grounds,* 312 So.2d 768 (1975). *See also, Hauser v. Urchisin,* 231 So.2d 6 (Fla. 1970) (City Commissioner held to have absolute privilege against defamation liability); *McNayr v. Kelly,* 184 So.2d 428 (Fla. 1966) (county manager held to have absolute privilege against defamation liability). The rationale for this absolute privilege is that the public has a right to be informed about the actions of public officials, who, ultimately, are acting in the public's name. To impose defamation liability on public officials when they attempt to inform the public of their actions would compromise seriously the public's right to oversee and make informed decisions about the conduct of its servants. *Hauser v. Urchisin,* 231 So.2d at 8.

In light of this rationale, those who report information from official sources to the public must be accorded a privilege for republication:

> [I]t would, indeed, be anomalous if the maker of a defamatory statement were privileged but a news agency which merely published a true account of the statement could be subject to liability.
>
> \*　　\*　　\*　　\*　　\*
>
> If freedom of public debate is to be meaningful, the dissemination of such debate must also be privileged to insure that it is heard by all. Thus, as *New York Times* and other cases have seemingly recognized, *the republisher is entitled to at least the same protection as the original speaker.*

*Grafton v. ABC,* 7 Med.L.Rptr. 1134 (Ohio Ct. App. 1980), (quoting Comment, 64 Colum. L. Rev. 1102 (1964)) (emphasis supplied); *Short v. News-Journal Company,* 58 Del. 592, 212 A.2d 718, 721-722 (1965);

*Moloney v. Tribune Publishing Co.,* 26 Wash. App. 357, 613 P.2d 1179 (1980).

It is undisputed that the sole source of the information concerning the Stable Lounge in the two newspaper articles was the Hillsborough County Sheriff's Office; and the articles accurately reported the information provided. Liability for defamation may not be imposed for accurately reporting (or fairly summarizing) official statements and information disseminated by a governmental agency. *See O'Neal v. Tribune Company,* 176 So.2d 535 (Fla. 2d DCA 1965).

If reports of officially disseminated information are substantially and materially accurate, the fact that the reported information itself later turns out to be erroneous is no basis for imposing liability. The test of accuracy for purposes of the privilege requires that the publications be compared not with the events that actually transpired, but with the information that was reported from official sources. *Mathis v. Philadelphia Newspapers, Inc.,* 455 F. Supp. 406, 415-17 (E.D. Pa. 1978). *See also, Binder v. Triangle Publications, Inc.,* 442 Pa. 319, 275 A.2d 53, 56 (1971); *Holy Spirit Association v. New York Times Co.,* 49 N.Y.2d 63, 68, 399 N.E.2d 1185, 1187, 424 N.Y.S.2d 165 (1979); *Hines v. New York News,* 6 Med.L.Rptr. 1982 (N.Y. Sup. Ct. 1980).

## III. THE NEUTRAL REPORTAGE PRIVILEGE

In *Edwards v. National Audubon Society, Inc.,* 566 F.2d 113 (2d Cir. 1977), officers of the Audubon Society accused scientists defending the use of DDT insecticides of being "paid liars." The accusations were reported in the *New York Times,* and the scientists sued the *Times* as well as the Audubon Society officials for libel. The Second Circuit held that liability cannot be imposed upon a newspaper for reporting statements by *private* individuals relating to a matter of public concern. It reversed a judgment against the *Times* and instructed that the complaint be dismissed, stating:

> [W]hen a responsible prominent organization like the Audubon Society makes serious charges against a public figure, the First Amendment protects the accurate and disinterested reporting of those charges, regardless of the reporter's private views regarding their validity . . . *What is newsworthy about such accusations is that they were made.* We do not believe that the press will be required under the First Amendment to suppress newsworthy statements merely because it has serious doubts regarding their truth. Nor must the press take up cudgels against dubious charges in order to publish them without fear of liability for that defamation.

556 F.2d at 120 (citations omitted) (emphasis supplied).

This "neutral reportage" privilege is similar to but distinct from the official action reporting privilege. Neutral reportage is broader than official action in that it is available for news reports of *privately disseminated* information, as well as news reports based on official sources. On the other hand, neutral reportage is narrower than official action in that it is available only for reports of *newsworthy* information. The rationale for this privilege is that the public's interest in the free flow of information about matters of public concern could hardly be served if newspapers could report only those statements that they considered true. Often the most newsworthy accusations are unfounded ones—ones that require public airing and scrutiny. Such accusations could not be republished—*even for the purpose of exposing their falsity*—if the neutral reportage privilege did not protect newspapers from liability for repeating the accusations.

The neutral reportage privilege has been applied in three Florida decisions. In *Smith v. Taylor County Publishing,* 8 Med.L.Rptr. 1294 (Fla. 2d Cir. Ct. 1982), *appeal docketed,* No. AN103 (Fla. 1st DCA June 28, 1982), the plaintiff complained of a news story reporting on an altercation between himself and another. The article reported statements concerning the altercation made by a police officer and the other party. Finding that the article was virtually a "reprint" of these statements, the court applied the neutral reportage privilege.

*Wade v. Stocks,* 7 Med.L.Rptr. 2200 (Fla. 2d Cir. Ct. 1981) involved a newspaper's report of comments by a private citizen concerning the plaintiff's character and fitness for public office. Granting summary judgment for the defendants, the court held that the newspaper was protected by the *Edwards v. National Audubon Society* doctrine of neutral reportage. The court noted that the newspaper defendant did not endorse the reported statements but rather merely reported them. *See Bair v. Palm Beach Newspapers,* 8 Med.L.Rptr. 2028 (Fla. 15th Cir. Ct. 1982), *appeal docketed,* No. 82-1362 (Fla. 4th DCA June 29, 1982).

The affidavits on file establish that The Tribune Company fairly and accurately reported information provided by the Sheriff's Office. Like the official action reporting privilege, the neutral reportage privilege requires only substantial accuracy as to material facts. Literal, technical accuracy as to every detail is not required. *Edwards v. National Audubon Society, Inc.,* 556 F.2d at 120.

For the neutral reportage privilege to apply, the only element necessary beyond those required for the official action privilege is that the matter reported upon be of public concern. The most obvious matters of public concern relate to the activities and conduct of public servants.

*Firestone v. Time, Inc.,* 271 So.2d 745, 748-49 (Fla. 1972), *rev'd on other grounds,* 305 So.2d 172 (Fla. 1974), *vacted and remanded,* 424 U.S. 448 (1976). Whether a particular subject is a matter of public concern is a question of law for the court. *Firestone v. Time, Inc.,* 271 so.2d at 751. *Bair v. Palm Beach Newspapers,* 8 Med.L.Rptr. at 2031.

This court holds that as a matter of law information concerning law enforcement activities in local bars clearly relates to the well-being of the public as a whole. There is an obvious public interest in law enforcement activities, and there is a "logical relationship" between the reported activities of a local sheriff's office and "the real concern of the public." *Firestone,* 271 So.2d at 751. Law enforcement is a subject about which the public has a right to be informed. E.g., *Cerrito v. Time, Inc.,* 302 F. Supp. 1071 (N.D. Cal. 1969), *aff'd in part and rev'd in part,* 449 F.2d 306; *La Bruzzo v. Associated Press,* 353 F. Supp. 979 (W.D. Mo. 1973).

Conclusion

Review of the Stable Lounge articles confirms that they are not defamatory as a matter of law. Moreover, the facts of this case compel application of the official action reporting privilege in that the defendant accurately reported information disseminated by representatives of the Sheriff's Office. The neutral reportage privilege also applies: The Tribune merely informed its readers about a matter of legitimate public concern.

WHEREFORE, it is hereupon adjudged and ordered as follows:

1. That the defendant's motion for summary judgment be, and the same is hereby, granted;

2. That summary final judgment be, and is hereby, granted to the defendant; and

3. That plaintiff shall take nothing by its complaint, and that defendant shall go hence without day.