LOG CREEK, L.L.C., et al., Plaintiffs,

v.

Howard KESSLER, et al., Defendants.

Case No. 4:09cv401–RH/WCS.

United States District Court,
N.D. Florida,
Tallahassee Division.

June 3, 2010.

Ari Jonathan Glazer, Moskowitz Mandell Salim Etc., Fort Lauderdale, FL, for Plaintiffs.

Carly J. Schrader, Gregory Thomas Stewart, Harry F. Chiles, Nabors Giblin & Nickerson PA, Tallahassee, FL, for Howard Kessler, Wakulla County FL.

Catherine Barbara Chapman, Mary Katherine Simpson, Guilday Tucker Schwartz Etc, Tallahassee, FL, for James E. Hennessey, M. Kathryn Gibson.

## ORDER DISMISSING THE COMPLAINT IN PART

ROBERT L. HINKLE, District Judge.

This case arises from a land-use dispute in Wakulla County, Florida. The plaintiffs are out-of-town developers. The defendants are the county, the chair of the county commission, and two owners of adjoining land. The plaintiffs say the county has violated the Equal Protection Clause by treating the plaintiffs differently from others, has violated the plaintiffs' right to procedural due process, and has taken the plaintiffs' property without just compensation. The plaintiffs say the commission chair acted unconstitutionally by moving to rescind a permit and violated the Florida open-meeting law by conducting an improperly-noticed meeting. And one plaintiff says the commission chair and the adjoining-land owners defamed him by falsely asserting he had engaged in illegal financial transactions.

The defendants have moved to dismiss. This order upholds the equal-protection claims because the plaintiffs have adequately alleged that the county treated them differently from similarly-situated others without a basis. But the order dismisses the remaining claims. The procedural-due-process claim fails because due process was provided or at least avail-

able at the plaintiffs' request. The taking claims will be dismissed on ripeness grounds because the plaintiffs have not sought and been denied just compensation. The claim based on the commission chair's motion to rescind a permit fails because of the absolute immunity that attaches to an action of that kind. The open-meeting claim fails because the violation—if it was a violation—was an isolated event that occurred in unusual circumstances; there is no reasonable likelihood that a violation will recur, and thus no basis for an injunction, the only substantive relief requested on this claim. Finally, the defamation claim, as now asserted, fails because the First Amendment bars a defamation claim of this kind absent an allegation of fault, and the plaintiff has disclaimed any allegation of fault.

## I. Facts

As is proper on a motion to dismiss for failure to state a claim, this order accepts as true the complaint's factual allegations, though not its legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Wakulla County is an historically rural county in the Florida panhandle. The county has substantial wetlands and other environmentally sensitive lands. In recent years the county has seen substantial growth. It has adopted a comprehensive plan and land-use ordinances, including a wetlands ordinance. It has established a code-enforcement board.

The plaintiffs H. Collins Forman, Jr., and Miles Austin Forman are residents of Broward County. Broward is a predominantly urban county in south Florida.

The Formans organized the other four plaintiffs, all limited liability companies: Log Creek, L.L.C.; Muir Woods, L.L.C.; Big Bend, L.L.C.; and Spring Creek, L.L.C. Each limited liability company bought land in Wakulla County. Each has met difficulties in obtaining the permits or approvals needed to develop its land as it wishes.

According to the complaint, the county has treated the plaintiffs' land differently from other, similarly-situated land, without a basis. Thus, for example, the complaint alleges that the county has prohibited Log Creek from using 1.2 acres consisting of depressions and a wetlands buffer zone, while other landowners have been allowed to use similar property and have not been required to have a buffer zone around wetlands. The complaint identifies four of the landowners who have not been held to the same buffer-zone requirement: the defendants James E. Hennessey and Kathryn Gibson, who own property adjacent to Log Creek's; the defendant Howard Kessler, who is chair of the county commission; and Wakulla County itself. The complaint alleges that there are no differences in the land or attending circumstances that would provide a rational basis for the differential treatment.

Similarly, the complaint alleges that Muir Woods sought a zoning change that complied with all applicable requirements, was supported by the county staff, and was moving through the process without difficulty until Mr. Kessler acted to block it, including by moving to revoke a prior conditional use permit. The complaint alleges that Spring Creek and Big Bend sought comprehensive-plan amendments, that two other specifically-named landowners simultaneously sought similar amendments, that all the proposals garnered the required state approval and were initially supported by the county's staff, that the county approved the other landowners' applications, but that the county rejected Spring

Creek's and Big Bend's applications, without a rational basis.

The complaint alleges that the real reason for the differential treatment was animus directed at the plaintiffs. The complaint alleges that Mr. Hennessey unlawfully removed a fence that Log Creek built on its own property, and that Log Creek sued Mr. Hennessey and won. The complaint alleges that Mr. Hennessey and Ms. Gibson sent an email to Mr. Kessler and others untruthfully asserting that Miles Austin Forman had "been associated with a variety of suspect and, on occasion, illegal financial dealings in South Florida." Compl. (document 1–2) at ¶ 54. The complaint alleges that Mr. Kessler forwarded the email to others, including the county manager and at least one private citizen, who participated in efforts to block the plaintiffs' projects. The complaint alleges that the email "poisoned the well," with the result that the plaintiffs have been treated differently from others who are similarly situated in all relevant respects.

## II. The Claims and the Motions To Dismiss

The complaint includes nine counts. All but count eight—the open-meeting claim—seek an award of damages. Count eight seeks injunctive relief. The complaint also seeks an award of costs and attorney's fees.

In count one, Log Creek sues the county under 42 U.S.C. § 1983 and the Equal Protection Clause. The assertion is that Log Creek is a class of one and that the county has selectively enforced the wetlands ordinance against it.

In count two, Log Creek sues the county under § 1983 for denying procedural due process in the wetlands-ordinance enforcement proceeding that resulted in the order prohibiting Log Creek from using 1.2 acres of its property.

In count three, Log Creek sues the county under § 1983 for taking its property—the 1.2 acres and perhaps the entire parcel—without just compensation.

In count four, Muir Woods sues Mr. Kessler under § 1983 for moving to rescind Muir Woods's conditional use permit, thus interfering with its use of its property.

In count five, Spring Creek, and in count six, Big Bend, sue the county under § 1983 and the Equal Protection Clause for denying the proposed comprehensive-plan amendments.

In count seven, all six plaintiffs sue the county under § 1983 for taking their property—their business reputation and goodwill—without just compensation.

In count eight, Log Creek sues Mr. Kessler for injunctive relief as a result of violating § 286.011, Florida Statutes, the open-meeting law.

In count nine, Miles Austin Forman sues Mr. Kessler, Mr. Hennessey, and Ms. Gibson for defamation—the publication of the email falsely asserting, among other things, that Mr. Forman had engaged in illegal financial transactions.

The defendants have moved to dismiss each count for failure to state a claim on which relief can be granted.

## III. The Merits

For convenience, this order addresses the plaintiffs' claims not count-by-count but in groups based on the controlling issues.

### A. Counts One, Five, and Six: Equal Protection

Counts one, five, and six assert "class of one" equal-protection claims against the county. Count one asserts that the county selectively enforced the wetlands ordinance against Log Creek, a class of one. Counts five and six assert that the county

selectively enforced the laws governing comprehensive-plan amendments, also against a class of one—Spring Creek in count five, and Big Bend in count six.

The Supreme Court has recognized that "the Equal Protection Clause is implicated in 'class of one' claims 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir.2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam)).

■ A plaintiff can assert a class-of-one claim based on a government's selective enforcement of otherwise-valid provisions. To state a claim for selective enforcement, a plaintiff must allege that (1) it was treated differently from similarly situated others and (2) the defendant unequally applied a facially neutral statute or ordinance for the purpose of discriminating against the plaintiff. *Id.* at 1314 (citing *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996)).

Counts one, five, and six are sufficient under these standards. Each alleges differential treatment without a basis, and each alleges facts plausibly supporting the assertion that the real reason for the differential treatment was animus.

■ In challenging the counts, the defendants correctly note that "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *Campbell*, 434 F.3d at 1314 (internal quotations omitted). But a plaintiff and a comparator need not share every characteristic to be similarly situated; they need only be alike in "relevant respects." *See id.* (citing *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir.2005)); *see also United States v. Armstrong*, 517 U.S. 456,

465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (explaining that a plaintiff bringing a selective-enforcement claim based on race "must show that similarly situated individuals of a different race were not prosecuted").

■ Each of these counts adequately alleges that others—the identified individuals, if not also the county—were situated similarly to the plaintiff in all relevant respects but were treated better. The defendants may ultimately prevail on their assertion that the others weren't really similar, but this is in substance a denial of the complaint's factual allegations. The factual dispute cannot properly be resolved on a motion to dismiss.

**B. Count Four: Absolute Immunity for Moving To Revoke a Permit**

■ Muir Woods had a conditional-use permit, but at a county commission meeting, Mr. Kessler moved to revoke it. The motion was tabled when the county attorney noted that Muir Woods had not been provided notice of a possible revocation as would have been required. Some months later the commission voted not to proceed with any proposed revocation. No formal vote was ever taken on Mr. Kessler's motion to revoke.

Muir Woods says the very making of the motion inflicted substantial damages, including, for example, causing it to incur attorney's fees in preparation for a revocation proceeding that, as it turned out, never came. Muir Woods says Mr. Kessler's motion treated Muir Woods—a class of one—differently from all other permit holders and thus violated the Equal Protection Clause.

The count fails to state a claim on which relief can be granted because it shows, on its face, that Mr. Kessler has absolute immunity from the claim.

The first step of the analysis is determining whether, in moving to revoke the

permit, Mr. Kessler was acting in a legislative capacity or in an executive or administrative capacity. The county commission performs functions in each category.

If revoking a permit is deemed legislative, Mr. Kessler has absolute legislative immunity. *See Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

The better view is that revoking a permit is an executive or administrative function, not a legislative one. But the outcome is the same. The decision to initiate an executive or administrative action of this kind also is protected by absolute immunity. In *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that a prosecutor has absolute immunity from a claim based on the initiation and pursuit of criminal charges. In *Butz v. Economou*, 438 U.S. 478, 514–16, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Court extended absolute immunity to a claim based on the initiation of an administrative enforcement proceeding. Lower courts have consistently followed the decision. *See Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633–35 (5th Cir.2000) (holding state board members absolutely immune from a claim based on the initiation of a license-revocation proceeding against a dentist); *Romano v. Bible*, 169 F.3d 1182, 1187 (9th Cir.1999) (holding a state attorney general and gaming-control board members absolutely immune from a claim based on the initiation of a disciplinary proceeding); *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 136–37 (4th Cir.1989) (holding state social workers absolutely immune from a claim based on the initiation of a child-custody-termination proceeding). Mr. Kessler, like the defendants in each of these cases, has absolute immunity.

A final point on this issue should be mentioned. One rationale for absolute immunity for initiating an enforcement action is the availability of adequate procedures for resolving the action. *See, e.g., Butz*, 438 U.S. at 512, 98 S.Ct. 2894; *Beck*, 204 F.3d at 635. The theory is that an official should be able to initiate a proceeding without fear of civil liability, and that if a proceeding is initiated improperly, the proceeding ultimately will fail, thus reducing the need for a damages remedy against the official who initiated the proceeding. This rationale loses strength in the absence of a framework that—if followed—will afford a reliable basis for resolving the dispute. This does not, however, cast doubt on the availability of absolutely immunity for Mr. Kessler. The governing law and the Due Process Clause would have required Wakulla County to provide adequate procedures prior to revocation of the permit. Indeed, when Mr. Kessler moved to revoke the permit, the county attorney said the matter could not be taken up because adequate notice had not been given. Muir Woods has not asserted that, under the governing law, the permit properly could have been revoked without following adequate procedures. Muir Woods has not asserted that the required procedures were violated, and for this purpose, it would not matter anyway. The issue is only whether adequate procedures were in place, not whether errors were made in following them. *See Beck*, 204 F.3d at 636 (holding that, for purposes of determining the availability of absolute immunity, "the inquiry is not whether the defendants committed error while executing the safeguards, but whether adequate safeguards existed").

Mr. Kessler has absolute immunity from the claim asserted in count four.

## C. Count Two: Procedural Due Process

Count two asserts a procedural due-process claim arising from the code enforce-

ment board's hearing on Log Creek's alleged violation of the wetlands ordinance. Log Creek alleges violations of the county ordinance establishing procedures for code-enforcement proceedings, *see* Compl. (document 1–2) at ¶¶ 138–42, and other procedural defects, and says these rose to the level of a due-process violation.

■ Some of the procedural defects plainly were not due-process violations. For example, Log Creek alleges it "did not receive notice of the hearing by certified mail as required by Wakulla County Ordinance 03–06." Compl. (document 1–2) at ¶ 138. Log Creek does not deny that it receive timely, actual notice; the beef is just that the notice was not sent *by certified mail.* And Log Creek laments that "[t]he secretary keeping the record [at the hearing] was not a deputy clerk as required by Wakulla County Ordinance 03–06." Compl. (document 1–2) at ¶ 139.

■ These minor defects, even if they violated the county ordinance, plainly did not rise to the level of a due-process violation. The Supreme Court has said that "a 'mere error of state law' is not a denial of due process." *Engle v. Isaac,* 456 U.S. 107, 121 n. 21, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (quoting *Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)). "The Due Process Clause ... safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness....'" *Rivera v. Illinois,* — U.S. —, 129 S.Ct. 1446, 1454, 173 L.Ed.2d 320 (2009) (quoting *Spencer v. Texas,* 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)). The Due Process Clause does not transform every violation of a state or local procedure into a constitutional violation.

Log Creek also says there were other procedural defects at the hearing. But the procedures mandated by the governing state and local law were fully adequate to comply with the Due Process Clause. And

if there were errors, state law provided a remedy: judicial review. Indeed, Log Creek has invoked this remedy; it is pursuing an appeal in the state system. When a state provides an adequate forum for the correction of procedural errors of this sort, it provides due process; the Constitution demands nothing more. *See Cotton v. Jackson,* 216 F.3d 1328, 1330–32 (11th Cir.2000) (per curiam) (citing *McKinney v. Pate,* 20 F.3d 1550, 1557 (11th Cir.1994) (en banc)); *see also Reams v. Irvin,* 561 F.3d 1258, 1266–67 (11th Cir. 2009).

Count two fails to state a due-process claim on which relief can be granted.

### D.  Counts Three and Seven: Taking Property

Counts three and seven assert federal constitutional claims for the taking of property without just compensation. The defendants have moved to dismiss the claims—and some of the complaint's other claims—for failure to exhaust state remedies.

■ Exhaustion of state remedies ordinarily is not a prerequisite to a § 1983 claim. As the Supreme Court has said:

It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and *the latter need not be first sought and refused before the federal one is invoked.*

*Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (emphasis added), *overruled on other grounds by Monell v. N.Y. City Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The *Monroe* principle has remained in place. *See, e.g., Fetner v. City of Roanoke,* 813 F.2d 1183, 1185 (11th Cir.1987); *see also James v. Richman,* 547 F.3d 214, 217 (3d Cir.2008). Indeed, more

recent cases have recognized that even state administrative remedies ordinarily need not be exhausted before filing a § 1983 claim. *See Patsy v. Bd. of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Beaulieu v. City of Alabaster,* 454 F.3d 1219, 1226–27 (11th Cir.2006).

[8] But the law is different for a taking claim. A plaintiff must "pursue any available state court remedies that might lead to just compensation before bringing suit in federal court under section 1983 for claims arising under the Fourteenth and Fifth Amendments for the taking of property without just compensation." *Bauknight v. Monroe County, Fla.,* 446 F.3d 1327, 1330 (11th Cir.2006) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). Because the Fifth Amendment forbids a taking only *without just compensation,* no constitutional violation occurs until just compensation has been sought and denied. *See Williamson County,* 473 U.S. at 194 n. 13, 105 S.Ct. 3108. Although the rule has been called an exhaustion requirement, it is more accurately characterized as an application of the Article III ripeness requirement. *See id.* at 193–94, 105 S.Ct. 3108; *Agripost, Inc. v. Miami–Dade County ex rel. Manager,* 195 F.3d 1225, 1231 (11th Cir.1999).

[9] Florida law allows a property owner to seek just compensation for a taking by initiating an inverse-condemnation proceeding. *See, e.g., Reahard v. Lee County,* 30 F.3d 1412, 1417 (11th Cir.1994) (citing *Joint Ventures, Inc. v. Dep't of Transp.,* 563 So.2d 622, 624 (Fla.1990)). But the plaintiffs apparently have not done so. The plaintiffs thus cannot pursue their taking claims as asserted in counts three and seven. The same would be true of count four—which may also assert a taking claim—but that count is barred in any event by absolute immunity, as discussed in section IV.B. above.

### E. Count Eight: Open Meetings

Count eight alleges that the Board of County Commissioners, with Mr. Kessler at the helm, violated Florida's open-meeting law, § 286.011, Florida Statutes. The allegation is that, at a properly-noticed meeting that was properly closed to the public so that litigation could be discussed, the Board improperly discussed matters unrelated to the litigation. The allegation is that those matters could not properly be discussed without a further notice and without opening the meeting to the public. The challenged discussion lasted eight minutes. Log Creek seeks to enjoin the Board from repeating this conduct.

[10] This order expresses no opinion on whether the Board violated the open-meeting law. Even if it did, Log Creek has failed to state a claim for injunctive relief, because it has failed to allege facts suggesting any real threat that a violation of this kind will recur. *See, e.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (holding that a person who had been subjected to a choke hold in the past had no standing to seek injunctive relief against the city's practice of using choke holds because there was not a "sufficient likelihood that he will again be wronged in a similar way"). Like the plaintiff in *Lyons,* Log Creek alleges violations in the past, but Log Creek has not alleged that it is likely to be subjected to the same practice again in the future. *See also Virdi v. DeKalb County Sch. Dist.,* 216 Fed.Appx. 867, 871 (11th Cir.2007) ("Past wrongs [alone] are insufficient to show an entitlement to an injunction against future wrongs.") (citing *Lyons* ).

Count eight fails to state a claim on which relief can be granted.

## F. Count Nine: Defamation

In count nine, a single plaintiff—Miles Austin Forman—asserts a defamation claim against Mr. Hennessey, Ms. Gibson, and Mr. Kessler. When this section of this order refers to "Mr. Forman," it means Miles Austin Forman.

■ The defamation claim arises from statements in an email that Mr. Hennessey and Ms. Gibson sent to Mr. Kessler. Mr. Kessler forwarded the email to the county manager and others. Thus all three defendants published the statements in the email.

The email complained about the way the Formans ran their businesses. It accused them of flouting the law and disregarding the legitimate needs of their neighbors. It alleged that Mr. Forman had "been associated with a variety of suspect and, on occasion, illegal financial dealings in South Florida." Mr. Forman asserts that these statements, including the accusation of illegality, were false.

Mr. Forman has not, however, alleged *fault*, that is, he has not alleged that the defendants knew the statements were false or would have known had they used due care to find out. The defendants have moved to dismiss the defamation claim on this basis. In response, Mr. Forman says he can recover without showing fault.

■ Florida law ordinarily requires a defamation plaintiff to prove fault. *See Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla.2008) (citing Restatement (Second) of Torts §§ 558B, 580A–580B, including the requirement to prove fault); *Thomas v. Jacksonville Television, Inc.*, 699 So.2d 800, 803–04 (Fla. 1st DCA 1997) (same); *see also Brown v. Suncoast Beverage Sales, LLP*, No. 2:09–cv–498, 2010 WL 555675, at *2 (M.D.Fla. Feb. 10, 2010) (listing the elements of defamation, including fault); *Johnson v. Charles Schwab & Co.*, No. 09–CV–81479, 2010 WL 678126, at *4 (S.D.Fla. Feb. 25, 2010) (same); *Axiom Worldwide, Inc. v. Becerra*, No. 8:08–cv–1918, 2009 WL 1347398, at *7 (M.D.Fla. May 13, 2009) (same). *But see In re Standard Jury Instructions*, 35 So.3d 666, 728–36 (Fla.2010).

A possible exception exists if a statement is defamatory "per se." If a statement is defamatory per se, fault is presumed, that is, no showing of fault is required. This makes defamation per se a strict-liability tort. *See Bass v. Rivera*, 826 So.2d 534, 535 (Fla. 2d DCA 2002); *Hay v. Indep. Newspapers, Inc.*, 450 So.2d 293, 295–96 (Fla. 2d DCA 1984); *Wolfson v. Kirk*, 273 So.2d 774, 777 (Fla. 4th DCA 1973); *see also Mid-Am. Food Serv., Inc. v. ARA Servs., Inc.*, 578 F.2d 691, 697 (8th Cir.1978) (recognizing that defamation per se requires no showing of fault). A false accusation of illegality is defamatory per se. *See Scott v. Busch*, 907 So.2d 662, 667 (Fla. 5th DCA 2005) (collecting cases); *Thompson v. Orange Lake Country Club, Inc.*, 224 F.Supp.2d 1368, 1377 (M.D.Fla.2002).

It should be noted, however, that it is unclear whether the strict-liability component of defamation per se survived *Jews for Jesus*, in which the Florida Supreme Court said fault is an element of defamation. *See* 997 So.2d at 1106. It could be that under *Jews for Jesus*, a defamation plaintiff must always prove fault, even in cases where the offending statement is defamatory per se. But this issue need not be decided here. Even if the strict-liability component of defamation per se is alive and well—and even if Florida law would allow Mr. Forman to recover on a theory of strict liability—that would not end the matter. The First Amendment imposes limits on state defamation law, and it does not allow the imposition of strict liability in these circumstances.

In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court addressed a private plaintiff's defamation claim *against a media defendant*. The Court held that a plaintiff can prevail on such a claim only by showing fault, that is, only by showing at least negligence. *Id.* at 347, 94 S.Ct. 2997; *see also Brewer v. Memphis Publ'g Co.*, 626 F.2d 1238, 1246–47 (5th Cir.1980). *Gertz* also said that a plaintiff can recover punitive or presumed damages on such a claim only by showing malice as defined in *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)—that is, only by showing that the defendant knew the statement was false or recklessly failed to check. *Id.* at 349–50, 94 S.Ct. 2997.

It is "still formally unsettled" whether *Gertz*'s fault requirement applies to defamation claims generally or only to claims against media defendants. *Andresen v. Diorio*, 349 F.3d 8, 17 n. 4 (1st Cir.2003) (citing 2 Tribe, *American Constitutional Law* § 12–3 (2d ed. 1988)).

Florida courts have recognized that, under *Gertz,* a plaintiff suing a media defendant must allege and prove fault—at least negligence—even when the statement would otherwise be defamatory per se. *See Mid–Fla. Television v. Boyles,* 467 So.2d 282 (Fla.1985); *Hay,* 450 So.2d at 295–96. But it may be unclear whether Florida law affords nonmedia defendants the same protection. *Compare Nodar v. Galbreath,* 462 So.2d 803, 808–09 (Fla. 1984) (recognizing that all persons, not just the organized media, have the right to comment on all matters, and concluding, "If common-law remedies for defamation are to be constitutionally restricted in actions against media defendants, they should also be restricted in actions against private, non-media speakers and publishers.") *and Owner's Adjustment Bureau, Inc. v. Ott,* 402 So.2d 466, 470–71 (Fla. 3d DCA 1981) (Hubbart, C.J., concurring) (suggesting that *Gertz*'s fault requirement applies in cases involving nonmedia defendants) *with In re Jury Instructions,* 575 So.2d 194, 200–01 (Fla.1991) (rejecting *Nodar*'s statement as dictum that had no effect on the law) *and Perry v. Cosgrove,* 464 So.2d 664, 665 & n. 1 (Fla. 2d DCA 1985) (adhering to the distinction between media and nonmedia defendants).

Even if Florida law does not require a showing of fault for a defamation claim against a nonmedia defendant, that does not end the matter. The defendants assert that the First Amendment prohibits the imposition of defamation liability without a showing of fault, even against a nonmedia defendant. The First Amendment trumps a state's common law. And a federal court of course need not—and does not properly—defer to a state court's First Amendment rulings. *See Sullivan,* 376 U.S. at 285, 84 S.Ct. 710; *see also Ace Cycle World, Inc. v. Am. Honda Motor Corp.,* 788 F.2d 1225, 1228 (7th Cir.1986) ("[A] federal court need not defer to a state's interpretation of the Federal Constitution.").

Courts addressing whether *Gertz* applies to defamation claims against nonmedia defendants have come out both ways. Those applying the decision to nonmedia defendants include *Levinsky's, Inc. v. Wal–Mart Stores, Inc.,* 127 F.3d 122, 132 (1st Cir. 1997) (addressing the punitive-damages restriction); *Rimmer v. Colt Indus. Operating Corp.,* 495 F.Supp. 1217, 1223–24 (W.D.Mo.1980) (addressing the fault requirement), *rev'd on other grounds,* 656 F.2d 323 (8th Cir.1981); and *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976) (same). Cases on the other side include *Rowe v. Metz,* 195 Colo. 424, 579 P.2d 83, 84–85 (1978), and *Wheeler v. Green,* 286 Or. 99, 593 P.2d 777, 784 (1979).

The decisions holding that *Gertz* does apply to nonmedia defendants have the better of the argument. A fundamental principle of First Amendment jurisprudence is that "[t]he inherent worth of speech ... does not depend upon the identity of its source, whether corporation, association, union, or individual." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 777, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Indeed, in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), six justices agreed that "in the context of defamation law, the rights of the institutional media are no greater and no less than those enjoyed by other individuals or organizations engaged in the same activities." 472 U.S. at 783–84, 105 S.Ct. 2939 (Brennan, J., dissenting); *id.* at 773, 105 S.Ct. 2939 (White, J., concurring in judgment); *see also Citizens United v. F.E.C.*, — U.S. ——, 130 S.Ct. 876, 905, — L.Ed.2d —— (2010) (citing *Dun & Bradstreet* and indicating that "the institutional press [does not have] any constitutional privilege beyond that of other speakers").

In light of *Dun & Bradstreet*, federal courts have almost uniformly held that media and nonmedia defendants are entitled to the same First Amendment protections in defamation cases. *See Snyder v. Phelps*, 580 F.3d 206, 220 n. 13 (4th Cir. 2009) (concluding that "[a]ny effort to justify a media/nonmedia distinction rests on unstable ground"); *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 149 (2d Cir. 2000); *In re IBP Confidential Bus. Documents Litig.*, 797 F.2d 632, 642 (8th Cir. 1986); *Garcia v. Bd. of Educ.*, 777 F.2d 1403, 1409–10 (10th Cir.1985); *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F.Supp.2d 32, 42 n. 5 (D.D.C.2005); *see also* Frederick Schauer, *Principles, Institutions, and the First Amendment*, 112 Harv. L. Rev. 84, 84 (1998) (noting that "[w]ith few exceptions, constitutionalized defamation law applies the same principles to a libel in the *New York Times* as it does to a slander over the back fence.").

Indeed, it would make little sense to give nonmedia defendants *less* constitutional protection than given to media entities. As the American Law Institute explained in the Restatement:

> [T]he principle of the *Gertz* decision would appear to be broad enough to cover [cases involving nonmedia defendants]. As the Supreme Court declares, the protection of the First Amendment extends to freedom of speech as well as to freedom of the press.... It would seem strange to hold that the press, composed of professionals and causing much greater damage because of the wider distribution of the communication, can constitutionally be held liable only for negligence, but that a private person, engaged in a casual private conversation with a single person, can be held liable at his peril if the statement turns out to be false, without any regard to his lack of fault.

Restatement (Second) of Torts § 580B cmt. e (1977).

Justice White made a similar point in his *Dun & Bradstreet* concurrence: "[It] makes no sense to give the most protection to those publishers who reach the most readers and therefore pollute the channels of communication with the most misinformation and do the most damage to private reputation." 472 U.S. at 773, 105 S.Ct. 2939 (White, J., concurring in judgment); *see also id.* at 783 n. 6, 105 S.Ct. 2939 (Brennan, J., dissenting) ("[I]t would be paradoxical to increase protection to statements injurious to reputation as the size of [a defendant's] audience, and hence [its] potential to injure, grows.").

In addition, giving controlling effect to a defendant's media or nonmedia status would require difficult or impossible line-drawing. Justice Brennan noted this in

1985, saying the approach would create serious "definitional questions" and would "likely be born an anachronism." *Dun & Bradstreet*, 472 U.S. at 782, 105 S.Ct. 2939 (Brennan, J., dissenting). If drawing lines was difficult then, it is far more difficult now, with the coming of the internet, blogs, and social-networking sites. The distinction between media and nonmedia speakers is illusory. *See Citizens United*, 130 S.Ct. at 905–06; *see also* Lyrissa B. Lidsky, *Silencing John Doe: Defamation and Discourse in Cyberspace*, 49 Duke L.J. 855, 905–07 (2000) (discussing the "increasing convergence of what might be labeled media and nonmedia speakers" and arguing that "nonmedia defendants should receive the same level of protection from defamation liability as media defendants").

In sum, *Gertz* properly applies in defamation cases brought against media and nonmedia defendants alike. In order to comply with the First Amendment, a plaintiff in such a case must plead and prove fault.

In reaching this conclusion, I have not overlooked *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). There the Supreme Court addressed the issue of falsity and limited its holding to claims against media defendants. *Id.* at 777–79 & n. 4, 106 S.Ct. 1558; *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 n. 6, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). Even so, courts almost always apply *Hepps* to claims against nonmedia and media defendants alike. *See* Robert D. Sack, *Protection of Opinion Under the First Amendment*, 100 Colum. L. Rev. 294, 326 & n. 166 (2000) (collecting cases). In any event, *Dun & Bradstreet* dealt with the issue of fault—the issue relevant to this case—and it decidedly rejected a distinction between media and nonmedia defendants.

One final issue deserves mention. The First Amendment fault requirement may apply only to speech on a matter of public concern. In *Dun & Bradstreet*, five justices agreed that *Gertz*'s limitation on punitive and presumed damages was so limited. 472 U.S. at 760–61, 105 S.Ct. 2939. In his concurrence, Justice White said the same was true of the fault requirement. *See id.* at 773–74, 105 S.Ct. 2939 (White, J., concurring in judgment); *see also* Patrick J. McNulty, *The Law of Defamation: A Primer for the Illinois Practitioner*, 44 Drake L.Rev. 639, 698 (1996) (asserting that, in light of *Dun & Bradstreet*, "[t]he *Gertz* fault standard does not apply to defamatory publications which involve only matters of purely private concern").

Neither the Supreme Court nor the Eleventh Circuit has squarely addressed whether *Dun & Bradstreet* limited the reach of *Gertz*'s fault standard. But even if *Gertz* was so limited, it would not help Mr. Forman here. The email at issue was sent to a public official, it was an attempt to influence official action, and it accused Mr. Forman—the subject of the official action—of illegality. It involved a matter of public concern. *See Silvester v. Am. Broad. Co.*, 839 F.2d 1491, 1493–94 (11th Cir.1988) (the public-concern standard was met when the speech alleged that the plaintiffs were involved in criminal wrongdoing); *In re IBP Confidential Bus. Documents Litig.*, 797 F.2d 632, 645–47 (8th Cir.1986) (en banc) (the public-concern standard was met when the speech alleged misconduct by a man who was involved in a congressional inquiry); *Pearce v. E.F. Hutton Group, Inc.*, 664 F.Supp. 1490, 1510 (D.D.C.1987) (the public-concern standard was met when the speech alleged that the plaintiff was responsible for a company's fraudulent business practices); *Lewis v. Elliott*, 628 F.Supp. 512, 521 (D.D.C.1986) (the public-concern standard was met when the defendant, an unsuccessful bidder for a government contract, accused the contracting official of ethical

violations to support its bid protest); *see also* Robert E. Drechsel, *Defining "Public Concern" in Defamation Cases Since Dun & Bradstreet v. Greenmoss Builders*, 43 Fed. Comm. L.J. 1, 11–14, 17 (1990) (collecting cases).

In his response to the motion to dismiss, Mr. Forman explicitly acknowledges that count nine does not allege fault. Nor do the facts alleged in count nine support an inference of fault. Count nine thus will be dismissed. *See Andresen,* 349 F.3d at 17 (affirming the dismissal of a defamation claim against a nonmedia defendant for failure to allege fault). Mr. Forman will be granted leave to amend count nine to allege fault if he chooses to do so.

## IV. Conclusion

For these reasons,

IT IS ORDERED:

1. The motions to dismiss (documents 1–4 and 7) are GRANTED IN PART and DENIED IN PART. Counts two, three, four, seven, eight, and nine are dismissed.

2. The plaintiff Miles Austin Forman is granted leave to file an amended count nine. Any amended count nine must be set out in a separate document, not combined with the remaining counts; Local Rule 15.1 will not apply.

3. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

SO ORDERED.