Bridge Cafe, Inc., Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellee.

Argued October 11, 1974, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*Abe Lapowsky,* for appellant.

*Kenneth F. Carobus,* Assistant Attorney General, with him *Harry Bowytz,* Assistant Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, December 13, 1974:

This is an appeal by Bridge Cafe, Inc. (appellant) from an order of the Court of Common Pleas of Philadelphia County affirming an order of the Pennsylvania Liquor Control Board (Board) suspending the appellant's restaurant liquor license for a period of fifteen days.

On July 30, 1973, acting on reports received from investigators for the Pennsylvania Crime Commission (Commission), the Board issued a citation to appellant to show cause why its Liquor License No. R-7947 should not be suspended or revoked and its bond forfeited. A hearing was held before the Board, which subsequently concluded that appellant had violated the laws of the Commonwealth and/or the regulations of the Board. This conclusion was based on the Board's finding of fact that "[t]he licensee, by its servants, agents or employes permitted upon the licensed premises solicitation

of patrons for immoral purposes, on January 6, 24, 25, 30, February 2, 6, 7, 1973." Pursuant to its finding and conclusion, the Board issued an order suspending appellant's license for a period of fifteen days, effective January 9, 1974.

The appellant appealed this order to the Court of Common Pleas of Philadelphia County. The Court held a de novo hearing, after which it adopted the finding of the Board and affirmed the Board's order. Appellant then brought the present appeal.

Appellant first contends that Section 471 of the Liquor Code[1] dictates that no penalty can be imposed against it because of the Board's failure to make an independent investigation of the alleged violation.[2] Section 471 reads in pertinent part as follows: "No penalty provided by this section shall be imposed by the board or any court for any violations provided for in this act unless the enforcement officer or the board notifies the licensee of its nature and of the date of the alleged violation within ten days of the completion of the investigation which in no event shall exceed ninety days."

Appellant's unique argument is that, although the Board could have issued a citation based upon the information contained in the Commission's report without sending any notice under Section 471,[3] because the

---

[1] Act of April 12, 1951, P. L. 90, art. IV, *as amended*, 47 P.S. §4-471 (Supp. 1974-1975).

[2] As mentioned earlier, the Board's citation was based on reports received from investigators for the Pennsylvania Crime Commission. The Board argues that its agents "investigated" these reports, but for purposes of this opinion we will assume that appellant is correct in its assertion that no independent investigation was made by the Board.

[3] Appellant concedes that *Greenspan Liquor License Case*, 438 Pa. 129, 264 A. 2d 690 (1970), stands for this proposition. We do not decide the correctness of appellant's concession at this time.

Board chose to send notice to appellant, it bound itself to conduct an independent investigation of the alleged violation.

We find this argument to be completely lacking in merit. We cannot see how appellant can receive additional rights from the fact that the Board sent out a notice which appellant concedes it did not have to send. Nor can we see how appellant was prejudiced in any way by this action of the Board.

Appellant's second argument, stated simply, is that the Court's finding will not support a suspension of his license because permitting the solicitation of patrons for immoral purposes is not a violation of the laws of the Commonwealth and/or the regulations of the Board. We do not agree.

Our research reveals that this conduct is made unlawful by Section 493 (25) of the Liquor Code, 47 P.S. §4-493 (25), which makes it a crime "[f]or any licensee or his agent, to employ or permit the employment of any female at his licensed . . . restaurant . . . for the purpose of enticing customers, or to encourage them to drink liquor, or make assignations for improper purposes . . . ."

Appellant's final argument is that there is no evidence in the record to support the Court's finding that appellant, by its servants, agents or employes, "permitted" the solicitation of patrons. The thrust of appellant's argument is that no evidence was offered to show that the appellant or its employes had knowledge of any solicitations.

Our reading of the record convinces us that the Court's finding is adequately supported. The record reveals that four state policemen, who visited appellant's premises on six different occasions within a two-week period, were solicited approximately fifteen times by twelve different women. The sheer volume of so-

licitations, coupled with the testimony of the policemen concerning the activities in appellant's premises, convinces us that appellant's employes, i.e., the bartenders, had actual knowledge of the solicitations. One witness, Trooper Francis R. McDonnell, gave this account of what he saw: "When we entered the Bridge Cafe we seated ourselves at the bar. There were three girls, female patrons at the time we entered, one black and two white girls. They were moving around the bar, talking to several male patrons. They would stop and talk and sit for a while and they would move on to another patron. In the course of the afternoon one or two of them had left. They'd leave and come back approximately a half hour later."

Trooper Charles E. Chubbuck gave this account of a conversation he had with a woman in appellant's premises: "So she said, 'Meet me down at the hotel.' I said 'No, I don't want to go there. I understand it's hot.' She said, 'No, it's not hot.' I said, 'Yeah, I heard it's hot. I don't want to go down there tonight.' She said, 'Wait a minute.' So she called George, who was the bartender, a Chinese. George came over and she leaned over the bar and whispered something in his ear. And all I saw George do was motion his head in the negative. She sat back down on the stool and said to me, 'No, everything is okay.' "

We find that the above evidence adequately supports the Court's finding that appellant, by its servants, agents or employes, permitted solicitation of patrons for immoral purposes. See *Barone's, Inc. v. Pennsylvania Liquor Control Board*, 10 Pa. Commonwealth Ct. 563, 312 A. 2d 74 (1973).

Order affirmed.