Keystone Commercial Properties, Inc., Appellant,
*v.* City of Pittsburgh, Appellee.

Argued November 8, 1974, before Judges CRUM-LISH, JR., KRAMER and MENCER, sitting as a panel of three.

*Gerald S. Lesher,* with him *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for appellant.

*Eugene B. Strassburger, III,* with him *Thomas S. White,* Assistant City Solicitor, and *Ralph Lynch, Jr.,* City Solicitor, for appellee.

OPINION BY JUDGE CRUMLISH, JR., January 16, 1975:

This is an appeal from a Decree of the Court of Common Pleas of Allegheny County which dismissed a complaint in equity. Keystone Commercial Properties, Inc. (Appellant) instituted this equity action to recover the market value of a building razed by the Appellee City of Pittsburgh (City) following an alleged breach of statute by the City in the course of demolition.

The City posted a notice of condemnation on June 4, 1970, on a vacant and open building located at 1229 Fifth Avenue. The condemnation notice enumerated the causative conditions: (1) Walls out of plumb, brick missing in front and rear walls; (2) Window frames and sashes rotted, glass broken out; (3) Roof sagging; (4) Floors out of level; (5) Interior walls out of plumb, plaster loose, falling off; (6) Building open, vandalized, unfit and unsafe for occupancy, constituting a serious hazard in the immediate area and a danger to the general welfare and the public; and (7) Violation Sec. 210-A(d) of Ordinance No. 300-1947. Notification of the condemnation action together with a copy of the appropriate regulations pertaining to the temporary sealing of openings in unguarded and vacant buildings was sent to the owners of record, Louis and Bessie Caplan, c/o Franklin Federal Savings and Loan Association. Previously, the City had advised the owners by letter dated December 12, 1969, that rubbish and debris had accumulated inside and outside of the building and that the building itself was in objectionable disrepair.

A follow-up letter to the City's condemnation notice was sent to the owners on March 12, 1971, informing them that preparations were underway to demolish the building since the conditions related in the condemnation notice had not been improved. In between the original condemnation posting of June 4, 1970, and the follow-up notice of March 12, 1971, Appellant entered into an agreement of sale to purchase the building.

Appellant subsequently obtained a building construction permit from the City to seal the exterior openings of the premises. These temporary repairs were completed by August 24, 1971, but permanent repairs were never undertaken. Numerous complaints about the property were received by the City from area residents, and in October of 1972, a City Inspector found the rear door open, windows broken, and wine bottles, garbage and other debris in the building. The City reposted the building with a condemnation notice on October 16, 1972, ascribing its action to the conditions enumerated in the prior notice. On October 26, 1972, the City awarded a contractor the demolition job which commenced shortly thereafter. Appellant first knew that its building was coming down on November 3, 1972.

Our scope of review in equity matters is limited. As we wrote in *Groff v. The Borough of Sellersville,* 12 Pa. Commonwealth Ct. 315, 317, 314 A. 2d 328, 330 (1974), "[t]he findings of fact of the chancellor will be reversed only where there has been a manifest or clear error or a clear abuse of discretion. The chancellor's decision will stand if there exists sufficient evidence to justify the findings and logically sound, reasonable inferences and conclusions derived therefrom." The issue before us, therefore, is to determine whether the chancellor committed manifest error in determining that the City had complied with the Act of May 13, 1915, P. L. 297, *as amended,* 53 P.S. §25081 et seq., insofar as it related to

fire prevention in second class cities, when it commenced demolition on November 3, 1972.

The section with which we are concerned is Section 3 of the Act, 53 P.S. §25094[1] which states in relevant part:

"Any owner, agent, or occupant interested, who may feel himself aggrieved by an order of the said department, which requires a substantial alteration or repair, or the removal of any substantial portion or portions, of any building, may, *within thirty days after the service of the order as hereinafter provided, present his petition to the court of common pleas of the county wherein the city is situated,* having first notified the said department of his intention so to do; and the court shall then fix a time for a hearing, within five days thereafter, and may suspend such order pending hearing; and thereafter, at the time fixed for the hearing, a judge of said court shall hear and determine the said appeal, *and make such order as right and justice may require.*

"In case any owner, agent, or occupant does not remove or remedy a building or structure, or part thereof, or remove or remedy dangerous conditions, as ordered by the said department, and does not appeal to the court of common pleas in such cases as appeals are provided for, the said department may remove or remedy, or cause to be removed or remedied, the building or structure, or part thereof,

---

1. In order to implement the power granted it by the Act the City has enacted Ordinance No. 76, approved March 3, 1966, amending Ordinance No. 300, approved August 6, 1967, known as the Building Code, which provides for written notice to owners of unsafe buildings, describing the unsafe conditions, a specific time period to correct the conditions, and demolition of the building if the prevailing conditions are not remedied. We have previously held that this ordinance is a proper exercise of police power. *City of Pittsburgh v. Kronzek*, 2 Pa. Commonwealth Ct. 660, 230 A. 2d 488 (1971).

or the dangerous condition, at the expense of the city; the cost thereof to be recovered by the city from said owner or occupant, in an action of law, in the court of common pleas; and when such suit, with statement of claim, with description of the premises, is filed by the city, the prothonotary shall index it upon the judgment docket, and the city shall have a lien for the amount of said claim against the said premises." (Emphasis added).

Appellant's contention below, as on appeal, is that the City violated the Act by demolishing the building prior to the expiration of the thirty day appeal period which it urges was born on October 16, 1972. There can be no dispute if we concede that the effective notification date began with the October 16, 1972 condemnation posting. However, if the effective date is measured from the June 7, 1970 notice, as City contends, City would not be in violation of the statute since more than thirty appeal days had gone by.

The chancellor below concluded that the operative date was June 4, 1970 and thus the City was not in violation when it ordered demolition of the property. That court reasoned that Appellant should have appealed within the thirty days or, in the alternative, instituted permanent repairs to correct the conditions enumerated in the original notice. It did neither but chose, pursuant to City regulations, to make "temporary repairs." A building permit was issued for that purpose which had the effect of staying the demolition for a period of six months.

In the interim between the expiration of the six month stay and the June 4, 1970 notice given by the City, nothing was done by City. No demolition occurred and there was no communication between the parties. The City then decided to renotify Appellee of the intended condemnation and a notice to this effect dated October 16, 1972 was sent. The Chancellor considered this notice mere surplusage. We cannot agree.

This being an action in equity, there are certain equitable maxims and rules uniquely applicable. Although sometimes overused, and often misunderstood, they have application in the case before us. Equity does not demand that its suitors shall have led blameless lives. *Loughran v. Loughran,* 292 U.S. 216, 229 (1934). But it is equally true that no man should profit from his own inequity or take advantage of his own wrong. B. Cardozo, The Nature of the Judicial Process 41 (1921). Citation of these two principles illustrates the Chancellor's manifest error below. Failure to consider the fact that the City was not blameless in this episode when it failed to condemn when the stay expired, and its reissuance of a subsequent repeating notice did, at the very least, allow Appellant to believe that this latest notice would have the same legal effect as its predecessor and thus lays blame at the City's feet as well. In these circumstances, we cannot consider the second notice mere surplusage. City cannot issue legal notice and then deny its legal effect. We do not here hold that Appellant "has led a blameless life", but we do hold that the City cannot profit by its own inequity.

Accordingly, consistent with the foregoing, we reverse the determination of the Chancellor below and remand the matter for a judicial determination of market value of the building razed or other such relief as the Chancellor may deem to be just and right.