347 A.2d 707

KEYSTONE COMMERCIAL PROPERTIES, INC., Appellee,

v.

CITY OF PITTSBURGH, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 26, 1975.

Decided Nov. 26, 1975.

608

Mead J. Mulvihill, City Solicitor, Eugene B. Strassburger, III, Deputy City Solicitor, Pittsburgh, for appellant.

Gerald S. Lesher, Baskin, Boreman, Wilmer, Sachs, Gondelman & Craig, Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On June 4, 1970, the City of Pittsburgh (hereinafter City) notified Louise and Bessie Caplan, the owners of a building at 1229 Fifth Avenue, Pittsburgh, that the building was in a dangerous condition [1] and was therefore condemned. The property was also posted as condemned on June 4, 1970. The notice informed the owners that they had thirty days in which to remedy the condition or to appeal the condemnation order to the courts. If the owners failed to take action, then the City would proceed to demolish the building. See Act of May 13, 1915, P.L. 297, as amended, 53 P.S. § 25094. The Caplans did nothing.

On December 16, 1970, Keystone Commercial Properties, Inc. (hereinafter Keystone) became the equitable owner of the property. Keystone was at the time of the agreement of purchase fully aware that the property was condemned and subject to demolition by the City. Keystone did nothing towards correcting the dangerous condition and on March 12, 1971, it received a letter from the City indicating the City was preparing to demolish the building.[2] On March 25, 1971, Keystone applied for

[1.] The June 4, 1970 condemnation notice had been preceded by a dangerous condition notice dated December 12, 1969, which enumerated the same dangerous conditions listed in the above condemnation notice.

[2.] The notices and letters involved in this case were sent either to or in care of Franklin Federal Savings and Loan Association.

and was issued a permit to seal the building. The legal effect of the sealing, which was subsequently carried out, was to stay the City's right to demolish the building for six months during which time Keystone would be allowed to make the necessary repairs to remedy the dangerous condition. The sealing was approved by the City on August 24, 1971. During the six months that followed, Keystone did nothing further to repair the building.

On October 16, 1972, the City sent another notice to the owner, now Keystone, which was identical to the notice sent to the Caplans on June 4, 1970. Keystone received the notice indirectly because it was not the legal title holder,[3] but it is unclear from the record and the trial court's findings whether it received it prior to or subsequent to demolition. But our analysis, *infra*, will show that whether the notice was actually received before or after demolition is not here relevant. The City then demolished the building on November 2, 1972 or prior to the expiration of a thirty-day period following the October 16th notice.

The record clearly indicates that Keystone was involved in real estate and understood all of the ramifications of the above notices and events. Additionally, Keystone has never made a claim that it did not receive nor understand any of the notices. Further, Keystone allowed a tenant to rent the building on a short-term lease for "dead" storage, while it was sealed. Moreover, a witness for Keystone testified that it intended to make repairs when it obtained a tenant. Presumably this meant when Keystone obtained a long-term tenant since

Franklin Federal was apparently the mortgagee when the Caplans received the June 4, 1970 notice. Subsequently, Franklin Federal became the legal title holder and remained such for the entire period during which Keystone was the equitable owner. Since Keystone does not argue that it did not receive any of the notices involved, for the sake of clarity we shall treat the notices as having been sent to Keystone.

3. See n. 2, supra.

no repairs were made while the short-term tenant occupied the building.

On November 15, 1972, Keystone filed a complaint in equity seeking to compel the City to restore the building or to pay Keystone the value of the building. After an evidentiary hearing, the chancellor entered an adjudication and decree nisi dismissing the complaint and denying Keystone any relief. He ruled that the City had fully complied with the Act of 1915, supra, when it served the condemnation notice of June 4, 1970, on the then owners of the building. He ruled the notice of October 16, 1972, was mere surplusage and conferred no additional rights on Keystone. He reasoned the sealing permit granted to Keystone in March, 1971 effectuated a temporary stay which lapsed after the expiration of six months and since Keystone failed to make the necessary repairs during the six-month period, the City had the right to raze the building in accordance with the June 4, 1970 condemnation notice. Keystone filed exceptions to this adjudication and decree which were subsequently dismissed by a court en banc. Keystone then filed an appeal in the Commonwealth Court and that court reversed the decree entered in the trial court and remanded the record to the trial court for the purpose of providing appropriate relief to Keystone. *Keystone Commercial Properties, Inc. v. City of Pittsburgh*, 17 Pa.Cmwlth. 54, 331 A.2d 247 (1975). City requested us to review the Commonwealth Court's order and we granted allocatur.

██ Inter alia, the Commonwealth Court stated Keystone was entitled to relief from the City because by not waiting for thirty days to expire after the notice of October 16, 1972, the City was in effect guilty of unclean hands. This is an inappropriate application of the unclean hands doctrine. That doctrine is a basis for a court of equity to refuse affirmative relief to either a petitioner or respondent. It is not a basis for a court of equity to grant affirmative relief. *Fantony v. Fantony,*

21 N.J. 525, 122 A.2d 593 (1956); *Clark v. Watts*, 10 N. J.Superior Ct. 283, 77 A.2d 188 (1950); 30 C.J.S. Equity § 96; 13 P.L.E., Equity § 34. Thus unless some other basis exists for overturning the trial court's decree, the order of the Commonwealth Court must be reversed.

■ Keystone advances three theories on which the Commonwealth Court's order, if not its reasoning, should be affirmed.

■ First, Keystone argues the City should be estopped from asserting that Keystone did not obtain an additional thirty days grace period before demolition could be carried out because of the October 16, 1972 notice. Essential to such a theory is a showing of reliance. *Stratford Arms, Inc. v. Zoning Board of Adjustment*, 429 Pa. 132, 239 A.2d 325 (1968). And see 28 Am.Jur. 2d Estoppel and Waiver § 27. Assuming Keystone received the notice subsequent to actual demolition, it had nothing on which to rely. Assuming Keystone received notice prior to demolition, a review of the record indicates that no such reliance was established by Keystone. After receiving the October 16, 1972 notice, Keystone did nothing. Arguably doing nothing could under other circumstances be viewed as establishing reliance. But, under the circumstances of this case, where Keystone did nothing to remedy the dangerous condition for almost two years, it is obvious to us that no actual reliance existed. Thus, Keystone's first theory is without merit.

Second, Keystone argues that the October 16, 1972 notice granted it thirty additional days in which to remedy the condition, without regard to the efficacy of the June 4, 1970 notice in October and November of 1972. This theory assumes Keystone received the October 16, 1972 notice prior to actual demolition. But even assuming that fact as true, we do not see any reason for allowing such a notice, absent reliance, to confer on Keystone greater rights. The second notice was mere surplusage

under the circumstances. The reasoning of the Commonwealth Court in *Bridge Cafe, Inc. v. Pennsylvania Liquor Control Board*, 16 Pa.Cmwlth. 58, 329 A.2d 332 (1974), is worthy of application here. In that case a licensee argued that although the Board could have issued a citation without sending any notice to the licensee, because it did notify the licensee, the Board was required to conduct an independent investigation not otherwise required. The court rejected the argument because no reason existed to support such a position. Further, the court stated that the notice did not prejudice the licensee. Likewise, the October 16, 1972 notice here did not prejudice Keystone because it never relied on it.

Third, Keystone argues that the June 4, 1970 notice was no longer effective to provide it with notice of the impending demolition. For purposes of this theory, it is irrelevant whether Keystone received the notice prior to or subsequent to the demolition. Clearly, the statute and ordinance require notice to a property owner thirty days prior to demolition. Thus, unless the June 4, 1970 notice remained effective, Keystone should prevail. However, an analysis of the purposes of notice and the type of situation in which a notice of condemnation and demolition becomes ineffective clearly establishes that the June 4, 1970 notice remained effective under the circumstances of this case.

■ The purposes of notice in this context are two-fold:

(a) Notice provides a property owner with the opportunity for a hearing in which to litigate the question of whether the property is actually a danger to public safety. Underlining both notice and the opportunity for a hearing is the constitutional protection against the taking of property without due process of law. *Miles v. District of Columbia*, 166 U.S.App.D.C. 235, 510 F.2d 188, 192 (1975). And see, *Mullane v. Central Hanover Bank and*

*Trust*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); 14 A.L.R.2d 73, § 3.

(b) Notice provides a property owner a reasonable time in which to make repairs in order to eliminate the dangerous condition. See Act of May 13, 1915, P.L. 297, as amended, 53 P.S. § 25094.

The purpose of notice here, is not to inform the property owner of the exact or even approximate time of demolition. Thus, unless one of the two purposes of notice was frustrated by the delay between notice and demolition, there exists no reason to disallow the continued effectiveness of the June 4, 1970 notice.

With regard to providing a property owner an opportunity to remedy the condition, Keystone knew of its obligation to remedy the condition from the date it purchased the building, almost two years prior to demolition. During this period of time, no repairs were made. Rather, when the City sent a letter to Keystone concerning preparations to demolish, Keystone utilized a six-month grace period, granted when the City allowed it to seal the building, to stay demolition. During the grace period, rather than remedy the condition which is the reason why the six-month grace period is given, Keystone did nothing towards repairing the dangerous condition.

Under these circumstances, Keystone was afforded ample opportunity to remedy the condition. Further, Keystone's conduct evidences an intent to disregard the statutory requirements that repairs be made in order to protect the public. Thus, one of the purposes, namely, that of providing the owner of the premises with the opportunity of removing the dangerous condition, was clearly fulfilled.

With regard to providing a property owner an opportunity for a hearing to litigate the question of whether the building was actually a danger to the public and thus properly condemned, a more difficult question is present-

ed.  Keystone purchased the property more than thirty days following the June 4, 1970 notice.  Thus, Keystone could not appeal the condemnation order under the terms of the statute.

But Keystone knew and understood the building was condemned when it purchased the property.  It also knew that the previous owners had not appealed the condemnation order.  Another purpose of the thirty-day limitation is to give finality to a condemnation order. Thus, Keystone purchased a property knowing that unless repairs were made, the property had been finally adjudicated in proper proceedings a danger to public safety, and, therefore, immediately subject to demolition. From the time of purchase until demolition, no repairs of any type which could possibly serve as a factual basis to require a reversal of the prior adjudication were made. Keystone had no reason to expect notice prior to demolition because the facts serving as the basis for the adjudication had not changed.  Further, Keystone supplied no facts or information concerning repairs to the City, nor did the City know of such facts, which would create any doubt in the minds of City officials as to their right to rely on the finalized order.  Whether, in a case where repairs made during a delay between the expiration of the thirty-day period and actual demolition, this Court would require the property owner to so inform City officials or whether the City would be required to carry out an investigation to determine if repairs were made, need not be decided here.  In this case, no repairs were made and Keystone and the City knew it.  Where, in fact nothing is done to remedy the condition, the City is entitled to rely on and act in accordance with a condemnation order which has been finalized by a fair procedure which afforded ample protection to the property's owners.

Thus, since an opportunity for a hearing was afforded Keystone's predecessors, in interest, and since no factual basis exists on which a new hearing should even be con-

sidered, the second purpose of the notice requirement has been fufilled.

Circumstances, where an argument similar to Keystone's third theory was advanced with success, existed in *Miles v. District of Columbia*, 354 F.Supp. 577 (D.D. C.1973); but that case is not only factually distinguishable, the distinguishing factors fully support a rejection of Keystone's third theory in the instant case.

In *Miles*, the owner of property was ordered by an appropriate governmental agency to show cause why the building on the property should not be condemned. A hearing was held and the building was ordered condemned. A six-year period passed before the agency ordered the building demolished without again notifying the owner. During the six-year delay the owner expended at least $37,000 in making repairs. The agency was fully aware of the extensive repairs but was not satisfied that the repairs had eliminated the dangerous condition.

The district court ruled that the owner was entitled to notice of the impending demolition in order to afford her an opportunity to register her objections and was entitled to a new hearing by the agency because of the substantial change in the character of the property.[4] Clearly, the owner in the *Miles* case could have objected on the grounds that the repairs were sufficient to remedy the condition or that she needed more time to complete repairs which had already begun and were substantial. *Miles v. District of Columbia*, 354 F.Supp. at 581. The district court, as well as the appeals court, referred numerous times to repairs already made and the circumstances under review.

4. In affirming the district court, the Appeals Court for the District of Columbia expressed no view on whether the owner was entitled to a new hearing. That court limited its determination to the failure to give notice. But, the Appeals Court stated numerous times that the owner attempted to restore the building and indicated that the agency knew of the attempt. *Miles v. District of Columbia*, 166 U.S.App.D.C. 235, 510 F.2d 188 (1975).

The case undoubtedly required notice because the owner had made extensive repairs and the agency knew there were possible grounds for objection.[5] In the instant case there were no grounds for objection. Keystone made no repairs and the condemnation order which was finalized was based on facts and circumstances which remained unaltered.

In summary, the operative facts in *Miles* were the grounds for objection of which the agency knew and a period of time three times longer than the instant case. The failure of Keystone to make any repairs and a period of delay of approximately two years, six months of which Keystone caused, requires a different result in this case.

Thus, since the purposes of notice have not been here frustrated and since facts requiring a new notice do not here exist, the third theory advanced by Keystone must fail.

The Order of the Commonwealth Court is reversed, and the Decree of the court of original jurisdiction is reinstated. Costs on Keystone.

JONES, C. J., did not participate in the consideration or decision of this case.

ROBERTS and MANDERINO, JJ., concur in the result.

5. The issue of whether notice should be required where repairs are made but the appropriate agency does not know of them, either because it did not again inspect the building or because the owner failed to inform the agency, was not before the court. The agency in *Miles* did know of the repairs. In the instant case, even if we were to require the City to determine if repairs are made during a delay rather than require the owner to inform the City, the determination would be irrelevant since, in fact, no repairs were made.