*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CO-803

GEORGE FADERO, APPELLANT,

V.

UNITED STATES, APPELLEE.

**03/22/2018**

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF3-3523-11)

(Hon. Ronna Lee Beck, Trial Judge)

(Submitted January 30, 2018                    Decided March 22, 2018)

George Fadero, *pro se*.

*Channing D. Phillips*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *O. Andrea Coronado*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN, FISHER, and THOMPSON, *Associate Judges*.

FISHER, *Associate Judge*: Appellant George Fadero challenges the trial court's denial of his D.C. Code § 23-110 (2012 Repl.) motion for post-conviction relief. We affirm.

## I.

This case reaches us for the third time. We summarized the facts in *Fadero v. United States*, 59 A.3d 1239, 1242–44 (D.C. 2013) (*Fadero I*), and do so only briefly here. On February 12, 2011, a Metropolitan Police Department Officer stopped appellant for a traffic violation. As the officer was walking away from appellant, he turned around to see appellant's van slowly moving toward him in reverse. The van hit the officer, knocking him to the ground, and causing him injuries. It then sped away from the scene.

The government charged appellant with several offenses based on this conduct, including felony assault on a police officer while armed ("APOWA"). A jury convicted appellant of four of the charged offenses, including APOWA. We affirmed all convictions, except one, which we held merged with the APOWA count. While that appeal was pending, appellant collaterally attacked the conviction through a § 23-110 motion, claiming ineffective assistance of trial counsel. *Fadero v. United States*, No. 13-CO-479, Mem. Op. & J. at 1 (D.C. Apr. 23, 2014) (*Fadero II*). The trial court denied the motion without a hearing, and we affirmed that decision, too. *Id.* at 4, 6. Appellant filed this second § 23-

110 motion *pro se*. The trial court denied it without a hearing and this appeal followed.

## II.

This appeal focuses on appellant's APOWA conviction, an offense that derives from two statutory provisions. *See Fadero I*, 59 A.3d at 1242 n.1 (defining the elements of APOWA). The first is felony assault on a police officer, D.C. Code § 22-405 (c), which makes it illegal to (1) assault a person when the defendant (2) "knew or should have known that the victim was a [law enforcement] officer" and (3) "caused a 'significant bodily injury to the law enforcement officer,' or committed 'a violent act that create[d] a grave risk of causing significant bodily injury to the officer.'" *Id.* (quoting § 22-405 (c)) (alterations in original). The second predicate is D.C. Code § 22-4502, which provides that defendants may face additional punishment if they commit "a crime of violence . . . when armed with or having readily available . . . [a] dangerous or deadly weapon."

## III.

Appellant principally argues that the phrase "grave risk of causing significant bodily injury," incorporated in § 22-405 (c), is unconstitutionally vague in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). In that case, the Supreme Court considered a provision of the Armed Career Criminal Act (ACCA) that defined a "violent felony," in relevant part, as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 135 S. Ct. at 2555–56 (quoting 18 U.S.C. § 924 (e)(2)(B) (2012)) (first alteration in original). The Court referred to the italicized language as the "residual clause" and held it void for vagueness. *Id.* at 2556, 2557. Appellant analogizes the "grave risk" language in § 22-405 (c) to the "serious potential risk of physical injury" language in the ACCA and contends that if the latter phrase offends due process, the former must as well.

We disagree. The holding in *Johnson* turned on the manner in which that sentencing enhancement provision operated. Whether the residual clause applied depended on whether the given offense created a sufficiently high risk of injury to

others. *See* 18 U.S.C. § 924 (e)(2)(B)(ii). Yet, the Supreme Court had held that the relevant ACCA provision, 18 U.S.C. § 924 (e)(2)(B)(ii), required a "categorical approach." *Taylor v. United States*, 495 U.S. 575, 600 (1990). In other words, judges were barred from assessing an offense's potential for harm based on the way a defendant committed it. *Johnson*, 135 S. Ct. at 2557. Instead, § 924 (e)(2)(B)(ii) required judges to "imagine how the idealized ordinary case of the crime subsequently play[ed] out" and evaluate "whether that abstraction present[ed] a serious potential risk of physical injury." *Id.* at 2557–58. Defining the "ordinary" way a crime unfolded was a highly subjective exercise—as the Court noted, "the ordinary instance of witness tampering [could] involve offering a witness a bribe . . . [o]r threatening a witness with violence"— and as a result, courts measured risk from a "speculative" starting point. *Id.* In holding the residual clause unconstitutionally vague, the Court emphasized this peculiar context. *Id.*

Section 22-405 (c) does not pose the same concerns. Whether a defendant "commit[ted] a violent act that create[d] a grave risk of causing significant bodily injury to the officer" is a question of fact. *See, e.g.*, *Mobley v. United States*, 101 A.3d 406, 421 (D.C. 2014) (holding trial judge committed plain error by "not instruct[ing] the *jury* that to return a guilty verdict on the APOWA offenses, it

must *find*" that the defendant caused a significant bodily injury or created a grave risk thereof (emphasis added)). It turns on the fact-finder's assessment of the defendant's actual conduct and does not require judges to measure the risk posed by reference to abstractions. *See id.* Demonstrating this point, on appellant's direct appeal, we approved the judge's jury instruction on APOWA's "significant bodily injury" element, *Fadero I*, 59 A.3d at 1248, a holding we could only have reached if we assumed that element posed a jury question—that is, one resolved by "apply[ing] the law to th[e] facts." *United States v. Gaudin*, 515 U.S. 506, 514 (1995). Similarly, when we held the evidence sufficient to establish that appellant created a "grave risk" of harm to the officer, we based our holding on the risks posed by appellant's behavior rather than the potential for harm inherent in the "ordinary" APOWA incident. *Fadero I*, 59 A.3d at 1252. As appellant's own case illustrates, § 22-405 (c) does not share the constitutional defects the Supreme Court perceived in the residual clause.

Moreover, § 22-405 (c) is precisely the type of statute the *Johnson* Court assumed its decision would *not* affect. The Court stated that "[a]s a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real world conduct." *Johnson*, 135 S. Ct. at 2561. Section 22-405 (c)'s grave risk language fits comfortably in this

category—indeed, the Court specifically highlighted the phrase "grave risk" as one it did not view as inherently vague. *Id.* Because § 22-405 (c)'s grave risk standard differs from the residual clause in ways the Court deemed "[c]ritical[]," appellant's *Johnson* challenge fails. *Id.* at 2557.

## IV.

We address appellant's remaining arguments summarily. First, appellant challenges the sufficiency of the evidence supporting his convictions for APOWA, Fleeing from Scene of Accident after Causing Personal Injury (D.C. Code § 50-2201.05 (a)(1) (2001)),[1] and Fleeing from a Law Enforcement Officer in a Motor Vehicle (D.C. Code § 50-2201.05b (b)(2) (2001)). On direct appeal, appellant already challenged the sufficiency of the evidence supporting the first two convictions and lost. *Fadero I*, 59 A.3d at 1251–52. "It is well-settled that where an appellate court has disposed of an issue on appeal, it will not be considered afresh on collateral attack in a trial court of the same judicial system, absent special circumstances." *Doepel v. United States*, 510 A.2d 1044, 1045–46 (D.C. 1986). Appellant has identified no such special circumstances; accordingly, the trial court

---

[1] After appellant lost on direct appeal, the Council of the District of Columbia repealed, amended, and recodified this provision as § 50-2201.05 (c) (2014 Repl.).

properly held that the sufficiency challenges to the first two convictions were procedurally barred.

With respect to the third conviction, appellant did not raise a sufficiency challenge on direct appeal even though the argument was available to him. *See Fadero I*, 59 A.3d at 1251–52. Consequently, he may only assert the claim in this § 23-110 proceeding if he can establish cause for and prejudice from his failure to make the argument previously. (*Charles*) *Thomas v. United States*, 772 A.2d 818, 824 (D.C. 2001). Appellant has not attempted such a showing, and, as a result, the trial court did not err in rejecting the third sufficiency challenge on procedural grounds.[2]

Next, appellant argues that § 22-405 (c) does not qualify as a "crime of violence" under § 22-4502 because crimes of violence require intentional conduct and, he asserts, § 22-405 (c) does not. Appellant relies primarily on federal cases for the supposed rule that whether an offense qualifies as a crime of violence depends on its intent element; however, the United States and the District of

---

[2] Moreover, appellant did not explain why the evidence at trial was insufficient, making his argument too "perfunctory" for our review. *See Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

Columbia define "crime of violence" in "very different" ways. *Colter v. United States*, 37 A.3d 282, 283 (D.C. 2012). While the United States Code defines such crimes by their "characteristics," *see* 18 U.S.C. § 16, the D.C. Code identifies them "by reference to a list of the offenses so designated." *Id.* (describing the relationship between § 22-4502 and § 23-1331 (4), the provision that enumerates "crimes of violence"). "[A]ssault on a police officer (felony)"—D.C. Code § 22-405 (c)—appears on that list. D.C. Code § 22-1331 (4). Therefore, it qualifies as a crime of violence regardless of whether it would satisfy the federal definition.[3]

Finally, appellant argues that the government violated article I, § 1 of the United States Constitution ("All legislative Powers herein granted shall be vested in a Congress of the United States. . . .") by charging him with APOWA, an offense appellant contends the legislature never established. Appellant did not raise this challenge to the indictment before trial. That makes the contention

---

[3] The trial court held this claim procedurally barred, and the government urges that we do the same. We do not address the procedural arguments because we choose to reject the claim on the merits. In doing so, we exercise our authority to affirm the trial court's judgment on "alternative ground[s]." *James v. United States*, 718 A.2d 1083, 1089 (D.C. 1998) (affirming trial court's denial of § 23-110 motion on different rationale than trial court invoked). Resolving appellant's claim in this way is not procedurally unfair to him. The government made the dispositive argument in its brief. Appellant could have responded to it but choose not to file a reply brief. *Cf. District of Columbia v. Patterson*, 667 A.2d 1338, 1347 (D.C. 1995) (disposing of claim based on argument raised in defendant's brief to which plaintiff failed to respond in its reply brief).

untimely, *see* Super. Ct. Crim. R. 12 (b)(3)(B)(v), and appellant has not attempted to excuse his delay by showing "good cause," *see id.* at 12 (c)(3). Accordingly, the trial court did not err in holding the argument procedurally barred. *Cf. Ko v. United States*, 722 A.2d 830, 836 n.17 (D.C. 1998) ("By failing to assert the claim of duplicity [in the indictment] at trial, Ko waived it.").

Even if appellant had followed proper procedures, his claim would still fail. In essence, appellant contends that the legislature did not intend prosecutors to combine D.C. Code §§ 22-405 (c) and -4502 (a)(1) into a single, chargeable offense. To the contrary, by enacting § 22-4502, the legislature authorized increased punishment for a broad category of offenses committed in an aggravated manner. It did so by "add[ing] an additional element, *i.e.*, while armed with or having readily available a dangerous weapon, to certain underlying offenses." (*Michael*) *Thomas v. United States*, 602 A.2d 647, 653 n.18 (D.C. 1992). Thus, it was the legislature, not the executive branch, that established aggravated offenses such as APOWA, murder while armed, and armed robbery. Consistent with that plain reading, this court treats such offenses no differently from any others. *See, e.g.*, *Robinson v. United States*, 100 A.3d 95, 105 (D.C. 2014) (applying traditional aiding and abetting liability principles to "while armed" offenses); *Pope v. United States*, 739 A.2d 819, 821 (D.C. 1999) (discussing "the *offense* of assault

with intent to kill while armed (AWIKWA), [a] violation of D.C. Code §§ 22-503, -3202 [the predecessor of -4502]" (emphasis added)). Accordingly, we reject appellant's premise: APOWA is an offense created by the legislature and, therefore, the prosecutor could not contravene legislative will—let alone usurp legislative powers—by charging him with it.[4]

## V.

Appellant's arguments have no merit. Thus, we affirm the trial court's denial of his § 23-110 motion.

*So ordered.*

---

[4] Appellant's argument suffers an additional defect: in relying on U.S. Const. art I, § 1, it assumes that Congress retains exclusive power to legislate for the District of Columbia. This is not so. Under the Home Rule Act, Congress delegated significant legislative authority to the Council of the District of Columbia, including the power "to enact new criminal statutes." *In re Perrow*, 172 A.3d 894, 898 (D.C. 2017); *see also* D.C. Code § 1-203.02 (2012 Repl.).