*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-0556

1417 BELMONT COMMUNITY DEVELOPMENT, LLC, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2010-CA-007158-B)

(Hon. Michael L. Rankin, Trial Judge)
(Hon. Anthony C. Epstein, Trial Judge)

(Argued May 9, 2023                    Decided September 28, 2023)

*S. Micah Salb* for appellant.

*Thais-Lyn Trayer*, Deputy Solicitor General, with whom *Karl A. Racine*, Attorney General for the District of Columbia at the time the brief was filed, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief for appellee.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant 1417 Belmont Community Development, LLC ("Belmont") claims that the District of Columbia violated Belmont's constitutional procedural-due-process rights by demolishing a building

owned by Belmont without giving Belmont adequate notice. We affirm the trial court's decision to grant summary judgment to the District.

## I.  Factual and Procedural Background

The following facts appear to be undisputed for current purposes, except as noted. Belmont began developing an existing building into condominium units. Several safety issues arose during the development period, including a partial collapse of the building in May 2008. The District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") hired building engineers to inspect the structure. The inspection report indicated that the building was "unstable," "in imminent danger of collapse," and "a life safety issue for the surrounding public and structures."

Belmont retained a structural engineering firm to consult on the partially collapsed structure. Belmont's engineer agreed that "the building was in an unsafe condition and was in danger of collapse."

On March 30, 2009, DCRA inspected the property and issued to Belmont a notice of violation and notice to abate ("NOV"). The NOV listed several violations

and identified statutory and regulatory provisions giving the District authority to take action with respect to the property. *See* 12-A D.C.M.R. § 115.1 (2008) ("Right to Deem Unsafe"; "All buildings or structures that are . . . abandoned, deteriorated, unsafe . . . , or are otherwise dangerous to human life . . . shall be taken down and removed or made safe and secure, as the code official may deem necessary . . . ."); D.C. Code § 42-3131.01(c)(1) (2001 ed., 2009) ("The Mayor may cause the summary correction of housing regulation violations or violations of the construction codes where a life-or-health threatening condition exists, as determined by the Mayor.") Under "violation," the NOV reproduced portions of the relevant regulatory and statutory provisions, stating:

> All buildings or structures that are or hereafter shall become abandoned, deteriorated, unsafe, unsanitary or deficient . . . or are otherwise dangerous to human life or the public welfare . . . shall be taken down and removed or made safe and secure, as the code official may deem necessary pursuant to this section or pursuant to [D.C. Code] § 42-3131.01, *et seq.* . . .

> * * *

> The Mayor may cause the summary correction of housing regulation violations where a life-or-health threatening condition exists, as determined by the Mayor. A life-or-health threatening condition means a condition that imminently endangers the health or safety of the tenant or occupant of the premises . . . .

* * *

> The owner or authorized agent shall be notified by personal service or by registered mail to the last known address and by conspicuous posting on the property . . . .

See D.C. Code § 42-3131.01(c)(1) (2009).

The NOV indicated that an inspection of the building's construction and "[o]ther [d]angerous [c]ondition" had been performed. The NOV also stated that the owner was required to abate the violations by taking the listed "required corrective action," which was to "[i]mmediately render structure safe by repair, demolition or raze." The NOV also stated that, within 15 days, "[t]he [o]wner of the property must cause construction to commence, remove exterior building supports and[] re-open the rear alley, or apply for a [raze] permit."

The second page of the NOV stated, "[t]he cited violation(s) must be abated as ordered within . . . 15 (fifteen) days from receipt of this notice. Failure to comply will result in this notice being forwarded to the Office of Compliance for enforcement action."

The third page of the NOV, titled "Failure to Correct Violations," stated that DCRA would re-inspect the property "on or around the time" by which the property owner was required to complete the corrections. The NOV further stated that "[i]f DCRA determines that you have failed to correct or abate the violation, this matter will be referred for correction under the authority of [D.C. Code] § 42-3131.01(a) . . . ." *See* D.C. Code § 42-3131.01(a)(1) (2009) ("[W]henever the owner of any real property in the District of Columbia shall fail or refuse, after the service of reasonable notice in the manner provided in § 42-3131.03, to correct any condition which exists on or has arisen from such property in violation of law . . . the Mayor . . . is authorized to: [c]ause such condition to be corrected" and to recover costs or fair market value of correction from property owner). The NOV also provided information about how to request a hearing to dispute the NOV.

On or about the day that the NOV was issued, a DCRA building inspector posted the NOV on the front door of the property and caused the NOV to be sent by first-class (regular) mail to the addresses on record for Belmont. The mail was not returned to the sender by the U.S. Postal Service, but Belmont asserts that it never received the mailed NOV.

According to Don Masoero, the District's Chief Building Inspector, Belmont's owner did not attend a meeting with District inspectors that had been scheduled for March 31, 2009, to discuss remedying the safety issues. Also according to Mr. Masoero, Belmont's owner did not answer his phone and the owner's phone did not accept voicemail messages. Belmont disputed those statements but does not appear to have presented evidence of its own about any contacts between Belmont and the District between the issuance of the notice and the razing of the building.

In May 2009, a DCRA inspector inspected the building and saw that the NOV was still posted on the structure. A second major collapse of the building occurred a few days later. DCRA determined that the building was a dangerous structure pursuant to 12-A D.C.M.R. § 115. On July 2, 2009, DCRA issued a permit to raze the structure. The District caused the structure to be razed approximately one week later.

Belmont filed an action in Superior Court under 42 U.S.C. § 1983, alleging among other things that (1) DCRA employees had violated Belmont's Fifth Amendment procedural-due-process rights by razing Belmont's building without proper notice, and (2) the District was liable for the DCRA employees' actions under

*Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978) (municipalities are liable under 42 U.S.C. § 1983 for actions of municipal employees when employees are executing municipality's "policy or custom").

The trial court initially granted summary judgment to Belmont, concluding that DCRA had violated Belmont's constitutional due-process rights by (1) failing to strictly comply with the statutory requirement to provide notice by personal service or registered—rather than regular—mail, as required by D.C. Code § 42-3131.01; and (2) serving an NOV that failed to put Belmont on notice of the intended razing of the building and that was issued before the District made its final decision to raze the building. The trial court also concluded that the razing of the building was an official policy decision of the District, so that the District was liable under *Monell* for razing the building.

The trial court subsequently reconsidered its ruling and granted summary judgment to the District. The court held that (1) DCRA's method of providing notice (posting and using first-class regular mail) was constitutionally adequate; (2) the content and timing of the notice was not constitutionally adequate; and (3) Belmont failed, however, to establish that the District was liable under *Monell* for the razing of the building without proper notice.

## II. Analysis

We review de novo the trial court's order granting summary judgment. *PHCDC1, LLC v. Evans & Joyce Willoughby Tr.*, 257 A.3d 1039, 1042 (D.C. 2021). "Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law," viewing the record in the light most favorable to the non-moving party. *Id.* at 1042-43 (internal quotation marks omitted). "[C]onclusory allegations by the nonmoving party are insufficient to establish a genuine issue of material fact or to defeat the entry of summary judgment." *Franco v. District of Columbia*, 39 A.3d 890, 894 (D.C. 2012) (internal quotation marks omitted).

### A. Municipal Liability under *Monell*

Belmont contends that the trial court erred in concluding that the District was not liable for the actions of DCRA employees in this case. Because we hold that Belmont's constitutional rights were not violated, we need not and do not reach the question whether the District would properly be held responsible for the actions at issue in this case. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)

(analysis of § 1983 claim asserted against municipality has two parts: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation"); *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018) ("It follows [from *Monell*] that, absent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the [c]ity."). Because more precise terminology therefore is not relevant for current purposes, we hereinafter refer interchangeably to the District and its employees.

## B.  Constitutional Procedural Due Process

The District does not dispute that it failed to fully comply with the statutory provisions governing notice.  *See* D.C. Code § 42-3131.01(c)(1) (2009) (before Mayor summarily corrects "life-or-health threatening condition," owner shall be notified by posting on property and by personal service or registered mail, unless owner's address is unknown or cannot be found).  Belmont seeks relief under § 1983, alleging that the District's failure violated Belmont's federal constitutional rights under the Due Process Clause of the Fifth Amendment.

The Due Process Clause requires the government to provide adequate notice and an opportunity to be heard before depriving an individual of a protected liberty

or property interest. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). The District does not dispute that it deprived Belmont of a protected property interest when it razed Belmont's building. The question for this court, therefore, is whether the notice provided to Belmont by the District was constitutionally adequate. We conclude that it was.

### 1. Per Se Due-Process Violation

Most broadly, Belmont argues that any failure to strictly follow state-law procedural requirements in connection with the deprivation of a constitutionally protected property interest necessarily amounts to a constitutional due-process violation. Although this is not entirely clear, Belmont appears to have retracted that argument in its broadest form. In any event, we are not persuaded by the argument.

The Supreme Court long ago held that the constitutional requirement of due process is distinct from the particular procedural protections a given governmental entity chooses to provide. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("The right to due process is conferred, not by legislative grace, but by constitutional guarantee.") (internal quotation marks omitted); *see also, e.g., Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("A mere error of state law . . . is not a

denial of due process.  The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness . . . .") (brackets, citations, and internal quotation marks omitted).  Thus, even where constitutionally protected property or liberty interests are at stake, numerous courts have held that a violation of a state or local procedural law governing notice does not by itself establish a violation of the constitutional due-process requirement.  *See, e.g.*, *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 366 (7th Cir. 2019) (rejecting procedural-due-process claim resting on argument that city-issued notices did not comply with requirements of state law; "[T]here is no constitutional procedural due process right to state-mandated procedures."); *Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1044 (10th Cir. 2016) (rejecting procedural-due-process claim resting on failure to hold hearing with 14-day advance notice as required by state law; "A failure to comply with state or local procedural requirements does not necessarily constitute a denial of federal due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause.") (internal quotation marks omitted); *Tate v. District of Columbia*, 627 F.3d 904, 908 (D.C. Cir. 2010) ("That the District may have . . . violated its own statutory notice requirement does not mean that it deprived [appellant] of the process due under the Fifth Amendment. The fact of a state law violation does not resolve whether a plaintiff has been

deprived of due process.") (brackets and internal quotation marks omitted); *Log Creek, LLC v. Kessler*, 717 F. Supp. 2d 1239, 1245 (N.D. Fla. 2010) (failure to comply with county ordinance requiring notice by certified mail was not procedural-due-process violation; "The Due Process Clause does not transform every violation of a state or local procedure into a constitutional violation.").

We agree with those holdings. We note that a contrary rule would have sweeping and surprising consequences. For example, imagine that District law required notice by registered mail at least six months before a hearing to determine whether an apparently abandoned building could be demolished. Imagine further that the District provided a building owner with actual notice in person over six months before the hearing, that the District also provided notice by registered mail over five months before the hearing, and that the owner actually appeared and participated at the hearing. On Belmont's broadest argument, the District would have violated the owner's constitutional procedural-due-process right, even though the owner would certainly have received ample notice and a full opportunity to be heard. We see no basis for such a conclusion.

Belmont cites a number of decisions that Belmont contends stand for the principle that, where a constitutionally protected property or liberty interest is at

stake, violation of a state procedural rule does necessarily establish a constitutional due-process violation. In our view, none of the cases cited by Belmont stand for that proposition. Belmont's strongest support is from a line of cases including *Associated Estates, LLC v. Caldwell*, 779 A.2d 939 (D.C. 2001). In that case, this court upheld the invalidation of a tax sale on the ground that proper statutory notice had not been provided. *Id.* at 941-45. In doing so, the court stated that "[s]trict compliance [with applicable statutory procedures] is required to guard against the deprivation of property without due process of law." *Id.* at 943 (internal quotation marks omitted). Pointing out that compliance with local procedures "guard[s] against" constitutional violations is quite different from holding that a failure to follow local procedures by itself establishes a federal constitutional violation. Neither in *Associated Estates* nor in any of the other cases cited by Belmont did the court endorse the latter principle.

For the foregoing reasons, we conclude that Belmont has not established a constitutional claim simply because the District did not comply with the applicable statutory provisions. We therefore turn to the question whether the notice provided by the District comported with the requirements of the Due Process Clause.

## 2. Method of Notice

It is undisputed in this court that the District both mailed notice of the NOV by first-class regular mail and posted the NOV on the building. The trial court concluded that the combination of mailing and posting met minimum constitutional due-process requirements. We agree.

To satisfy procedural due process, "notice must be accomplished by a method reasonably calculated to afford the party an opportunity to be heard." *Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1086 (D.C. 2007) (internal quotation marks and citations omitted). Notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent." *Id.* (internal quotation marks and citations omitted).

"Service by [regular] mail is reasonably calculated to give notice in most circumstances." *Coleman v. Scheve*, 367 A.2d 135, 137 n.1 (D.C. 1976); *see Boddie v. Robinson*, 430 A.2d 519, 521 n.4 (D.C. 1981) ("Notice by mail generally satisfies due process demands."). Posting notice on the property in conjunction with mailing "affords an additional measure of notification." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 316 (1950); *see Greene v. Lindsey*, 456 U.S. 444, 455 n.9

(1982) (mailing and posting together are "constitutionally preferable" to mailing alone).

It is true that Belmont denies having received a copy of the NOV. Belmont did not introduce evidence to support that denial, but in any event, "[a]dequate notice, rather than actual notice," is required by the Due Process Clause. *Kidd Int'l*, 917 A.2d at 1086 (internal quotation marks omitted).

Belmont relies on a federal decision holding that, "[b]ased upon the peculiar facts" of the case, attempted service by first-class regular mail was not constitutionally adequate. *Miles v. District of Columbia*, , 585 (D.D.C. 1973), *aff'd*, 510 F.2d 188 (D.C. Cir. 1975). *Miles* does not aid Belmont for two reasons. First, in this case there was service not only by first-class mail but also by posting on the property at issue. Second, the facts in *Miles* are quite removed from those of the present case. In *Miles*, over seven years passed between the provision of notice and the razing of the building at issue, and during that period the District and the property owner had engaged in negotiations and the property owner had arranged for financing to repair the property. *Miles v. District of Columbia*, 510 F.2d 188, 192 & n.3 (D.C. Cir. 1975).

In sum, we uphold the trial court's ruling that the method of service in this case met the requirements of the Due Process Clause.

### 3. Content and Timing of Notice

The trial court initially concluded that the content and timing of the NOV were constitutionally deficient, because (1) the NOV did not inform Belmont that the District could summarily raze the building if Belmont did not correct the violations, instead indicating that Belmont could apply for a raze permit; and (2) the NOV was issued before the District had made a final decision to demolish the building. The trial court subsequently stated that the NOV did put Belmont on notice that the District might take summary action, but was "ambiguous" as to whether the District would provide additional notice before the District razed the building. We hold to the contrary that the content and timing of the NOV in this case satisfied the requirements of procedural due process.

We note a threshold point. The District argued that this court could properly affirm the trial court's grant of summary judgment on the alternative ground that not only the manner but also the content and timing of the notice were constitutionally adequate. That purely legal issue was fully briefed in the trial court, and the trial

court explicitly decided the issue favorably to Belmont. After the District challenged that ruling in its brief on appeal, Belmont had the opportunity to respond to that argument in its reply brief but failed to do so. We need not address whether Belmont's failure to respond in the reply brief to the District's argument could appropriately be treated as a forfeiture or concession. *Compare Frankel v. D.C. Off. for Plan. & Econ. Dev.*, 110 A.3d 553, 559 n.11 (D.C. 2015) (court was not aware of case law or court rule "suggesting that a party waives an issue by choosing not to address it in a reply brief"), *with Classic CAB v. D.C. Dep't of For-Hire Vehicles*, 244 A.3d 703, 707 (D.C. 2021) (petitioner "effectively conceded" issue by failing to respond in reply brief to argument raised in respondent's brief) (internal quotation marks omitted). In any event, given the circumstances, we see no procedural unfairness to Belmont in affirming on the alternative ground advocated by the District. *Cf., e.g.*, *Fadero v. United States*, 180 A.3d 1068, 1072 n.3 (D.C. 2018) (no procedural unfairness in affirming on ground not relied upon by trial court, where argument was made in appellee's brief and appellant could have responded to argument in reply brief but did not).

The NOV indicated that the building was unsafe and cited statutory and regulatory provisions providing that the District had the authority to itself raze the building if the dangerous conditions were not corrected within 15 days. That

language was sufficiently specific to put Belmont on notice that, if it did not correct the dangerous condition of the building within the specified time, the District might raze the building at any time.

We further conclude that the NOV did not state or imply that the District would necessarily provide further notice before razing the structure. Rather, the notice indicated that if the cited violations were not corrected within 15 days, the notice would be "forwarded to the Office of Compliance for enforcement action." The notice further stated that "[i]f DCRA determines that you have failed to correct or abate the violation [after DCRA's re-inspection], this matter will be referred for correction under the authority of [D.C. Code] § 42-3131.01(a) (2003)." That language did not state or imply that there would be further notification before razing if Belmont did not take action to correct the cited violations within the specified time period. To the contrary, the citation to D.C. Code § 42-3131.01(a) made clear that the District was asserting the authority to itself "[c]ause such condition to be corrected" and to be compensated by the owner. D.C. Code § 42-3131.01(a)(1) (2009). We conclude that the NOV gave adequate notice to Belmont of the possible razing of the building. *See, e.g.*, *Keystone Comm. Props., Inc. v. City of Pittsburgh*, 347 A.2d 707, 710 (Pa. 1975) ("The purpose of notice here is not to inform the property owner of the exact or even approximate time of demolition," but rather to

provide owner with opportunity for a hearing "in which to litigate the question of whether property is actually a danger to public safety" and to provide "reasonable time in which to make repairs . . . to eliminate the dangerous condition.").

The NOV also contained detailed information about Belmont's right to request a hearing to challenge the required corrections, adequately informing Belmont of its right to be heard before any deprivation. *See Taylor v. District of Columbia*, 606 F. Supp. 2d 93, 96 (D.D.C. 2009) (plaintiff failed to state due-process claim where plaintiff received notice expressly indicating plaintiff's right to hearing and advising plaintiff how to request hearing).

It is true that about three months passed between the issuance of the NOV and the razing of the building. We see no reason, however, to view that interval as giving rise to a constitutional violation. First, there is no evidence in this case that the District lulled Belmont into reasonably believing that the risk of action against the building had passed. This case therefore does not raise the concern reflected in *Miller v. District of Columbia*, 587 A.2d 213, 214 & n.4, 221-22 (D.C. 1991) (constitutional due process might require District to provide second notice of intent to raze building where first notice was followed by eighteen months of negotiations in which agency told property owner to "keep [agency] abreast" of any work begun).

There appears to be no evidence in the record that Belmont had been in negotiations with the District during the period between when the NOV was issued in late March and when the building was demolished in early July. In fact, the District presented evidence that Belmont's owner failed to respond to the District's attempts to communicate during that time period, and Belmont has not pointed to any evidence in the record to the contrary.

In addition, there appears to be no evidence in the record that Belmont independently attempted to make improvements to the safety of the building or began to undertake the required corrections during the period after the NOV was issued and before the building was razed. *Cf. Miles*, 510 F.2d at 192 (concluding that due process required District to provide new notice before demolishing buildings, where property owner had "attempted to restore the buildings by obtaining substantial financing after receiving several extensions of time from the [agency]").

Nor was the intervening time period so long that the Due Process Clause would require a second notice. Approximately three months elapsed between issuance of the NOV and the razing of the building. *Cf., e.g.*, *Miles*, 510 F.2d at 192 & n.3 (over seven years passed between issuance of initial condemnation order and razing of building).

Nor, finally, did the Due Process Clause require the District to provide further notice after the District made a definite decision to raze the building. Rather, we hold that it was constitutionally sufficient for the District to advise Belmont that the building was unsafe, that the District claimed the authority to fix the problem itself if Belmont did not in a timely fashion, and that Belmont had a right to be heard at a hearing. In sum, we hold that the NOV was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

### C. Takings Clause Claim

Belmont argues that the District's razing of Belmont's building violated the Takings Clause of the Fifth Amendment. The District responds that that issue is not properly before this court, because Belmont belatedly attempted to raise a Takings Clause claim in the trial court and then abandoned that claim. Belmont has not contested the District's argument on that point. The trial court concluded that although Belmont had at some earlier points appeared to raise a Takings Clause claim, Belmont subsequently failed to preserve that claim by failing to raise it in

later filings and by indicating at a pretrial conference that its only claim was related to procedural due process.

We ordinarily do not decide issues that were not properly presented to the trial court, except in "exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record." *Linen v. Lanford*, 945 A.2d 1173, 1180 n.4 (D.C. 2008) (internal quotation marks omitted). We see no such exceptional circumstances in this case. We therefore conclude, as the trial court did, that the Takings Clause claim was not properly preserved for our review, and we decline to consider that claim.

For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered.*